545 F.2d 406
 2 Fed. R. Evid. Serv. 223
 UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Douglas CRAVERO, a/k/a "Ricky," Sharon Willets,
Marianne Cook, Phillip Siegal, Ronald Clifford
Chandler, and Bobby Eugene Miller,
Defendants-Appellants.
 No. 75-2718.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 6, 1976.
Rehearing and Rehearing En Banc Denied Jan. 7, 1977.
Certiorari Denied Feb. 22, 1977.
See 97 S.Ct. 1123.
 
 Milton Grusmark, Miami, Fla., for Cravero, Chandler and Willets.
 Michael J. Osman, Miami, Fla., for Cook.
 Albert G. Caruana (Court Appointed for Miller), Burton Young, Richard A. Sharpstein, North Miami Beach, Fla., for Miller and Siegal.
 Robert W. Rust, U. S. Atty., Miami, Fla., Frederick W. Read, III, Appellate Sec., Robert J. Erickson, Atty., Crim. Div., Washington, D. C., Ronald W. Rose, Sp. Atty., Martin L. Steinberg, Miami Strike Force, U. S. Dept. of Justice, Miami, Fla., for plaintiff-appellee.
 Appeals from the United States District Court for the Southern District of Florida.
 Before BROWN, Chief Judge, TUTTLE and GEE, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 One or more of appellants challenge their convictions for various narcotics-related offenses[1] on each of the following grounds: (1) the indictments should have been quashed because the Department of Justice Strike Force attorney who obtained them was not appointed directly by the Attorney General, and his blanket authorization to prosecute violations of federal criminal statutes failed to provide the statutorily-required specific designation of authority to conduct the grand jury inquiry; (2) the "continuing criminal enterprise" statute, 21 U.S.C. § 848 (1970), which formed the basis of one count in the indictment, is unconstitutionally vague; (3) each appellant's motion for a judgment of acquittal on all counts should have been granted because the evidence fails to support the convictions on any count; (4) appellants Siegal and Miller should have been granted a severance; (5) the narcotics and related paraphernalia introduced at trial were illegally seized and should have been suppressed; (6) the hearsay declarations of an indicted coconspirator who had previously been acquitted should not have been admitted; (7) the prosecutor improperly cross-examined a defense witness; and (8) newly discovered evidence justifies a new trial for appellant Cook. We state the facts pertinent to each point as we discuss it. The convictions are affirmed.
 
 
 2
 I. Prosecuting Attorney's Authorization to Conduct Grand Jury Inquiry
 
 
 3
 All appellants contend that the Department of Justice Organized Crime Strike Force attorney who presented the case to the grand jury was neither "specially appointed" nor "specifically directed" by the Attorney General to conduct the grand jury inquiry as required by 28 U.S.C. § 515(a) (1970),[2] because he was appointed by an Assistant Attorney General and because his letter of authorization failed to designate the type of case to be prosecuted. Both grounds of attack fail. First, 28 U.S.C. § 510 (1970) permits the Attorney General to delegate to any other Department of Justice official "any function of the Attorney General," which includes the power to appoint special attorneys under section 515(a).[3] And by regulation C.F.R. §§ 0.55, 0.60 (1974), the Attorney General delegated to the Assistant Attorney General in charge of the Criminal Division, who signed the authorization here, the power to designate attorneys to present evidence to grand juries in all cases under his control. See In re Persico, 522 F.2d 41, 67 (2d Cir. 1975). Second, the letter of authorization, which "specially authorized and directed" the special attorney to investigate "violations of Federal Criminal Statutes by persons whose identities are unknown" in the Southern District of Florida and other judicial districts and "to conduct . . . any kind of legal proceedings, . . . including Grand Jury Proceedings . . . , which United States attorneys are authorized to conduct," is identical in language to the authorization that we recently upheld in United States v. Morris, 532 F.2d 436, 439-40 (5th Cir. 1976). We adhere to Morris and hold that the authorization need not mention the parties or the particular federal statutes[4] under which the indictment was sought.
 
 
 4
 II. Unconstitutional Vagueness of the Continuing Conspiracy Statute
 
 
 5
 Appellants Chandler and Cravero argue that the "continuing criminal enterprise" statute, 21 U.S.C. § 848(b)(2) (1970), which makes a crime any violation of the statute if
 
 
 6
 (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter
 
 
 7
 (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
 
 
 8
 (B) from which such person obtains substantial income or resources(,)
 
 
 9
 is unconstitutionally vague in using the terms (1) "a continuing series of violations," (2) "a position or organizer, a supervisory position, or any other position of management," and (3) "substantial income or resources." The Second and Sixth Circuits have upheld the statute against precisely this attack in United States v. Manfredi, 488 F.2d 588, 602-03 (2d Cir. 1973), cert. denied, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974), and United States v. Collier, 493 F.2d 327 (6th Cir.), cert. denied, 419 U.S. 831, 95 S.Ct. 56, 42 L.Ed.2d 57 (1974) (quoting Manfredi as the sole basis for its decision).[5] We agree with these decisions on the grounds stated in Manfredi :
 
 
 10
 The conduct reached is only that which the violator knows is wrongful and contrary to law. See Screws v. United States, 325 U.S. 91, 102, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945). . . .
 
 
 11
 . . . Here . . . the statute might have been more artfully drawn, but no language has occurred or has been suggested to us that better expresses the congressional purpose. To sustain (appellant's) position would force us to hold that words cannot be devised to make it an offense to engage in the continuous sale and trafficking in heroin with a number of other people and with substantial sums of money changing hands; we feel that not to be the case and that, as applied to the conduct with which (appellant) was charged . . . the statute is not unconstitutionally vague.
 
 
 12
 488 F.2d at 602-03.
 
 III. Sufficiency of the Evidence
 
 13
 All appellants challenge the sufficiency of the evidence to support their convictions on each count and claim that the lower court erred in refusing to grant any of their frequent motions for judgment of acquittal. But the evidence on each count so easily satisfies this circuit's test of sufficiency in reviewing a lower court's denying a motion for judgment of acquittal that reasonable minds could conclude that the evidence is inconsistent with the hypothesis of innocence, see, e. g., United States v. Prout, 526 F.2d 380, 384 (5th Cir. 1976) that we feel obliged to discuss only Cook's argument that the prosecution proved no more than her presence on the scene. Although "(m)ere presence at the scene of a crime . . . is not enough to prove participation in it," United States v. James, 528 F.2d 999, 1013 (5th Cir. 1976), Cook ignores not only evidence of the substantial nature of the narcotics-processing operation in her home, but also the presence of her fingerprints on most of the processing paraphernalia found in her bathroom and the discovery[6] of a number of packets containing cocaine and marijuana cigarettes in her bathroom, master bedroom, and living room. Viewing all this evidence and reasonable inferences therefrom in a light most favorable to the government, see Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942), we think that the government sufficiently proved constructive possession under section 841(a)(1).[7]
 
 IV. Denial of Severance
 
 14
 Appellants Siegal and Miller, charged only with importation and conspiracy to import and possess with intent to distribute, object to the lower court's refusal to sever them from Cravero, who was charged additionally with possession and a continuing criminal enterprise.[8] But they were properly joined with Cravero under Fed.R.Crim.P. 8(b),[9] since all were charged with participating in "the same series of acts or transactions constituting an offense or offenses." Having been properly joined, their motion for severance was committed to the trial court's sound discretion, and denial of a severance will not be reversed unless appellants meet the heavy burden of demonstrating clear prejudice. See, e. g., United States v. Crockett, 514 F.2d 64, 70 (5th Cir. 1975). Their claim is that they were prejudiced by the introduction of evidence aimed solely at proving Cravero's guilt on the two additional counts, by Cravero's notoriety, by an inability to call other co-defendants as witnesses, and by the general strategic inferiority of a joint trial. But they proved no such prejudice. First, while some evidence was introduced solely to prove Cravero's guilt on the additional counts, neither appellant demonstrated either a "clear likelihood of confusion on the part of the jury to his prejudice," see Gordon v. United States, 438 F.2d 858, 879 (5th Cir.), cert. denied, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56 (1971) (citing cases), or an antagonistic defense, see United States v. Johnson, 478 F.2d 1129, 1131-34 (5th Cir. 1972); United States v. Wilson, 451 F.2d 209, 215 (5th Cir. 1971).[10] Second, although local newspapers published several potentially prejudicial news stories before and during trial, appellants have demonstrated no inherent prejudice in the trial setting or actual prejudice from the jury selection process, see Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), and the lower court took every possible measure to safeguard appellants, repeatedly warning the jurors to avoid all news sources and carefully examining the jury members to insure that his instructions had been followed. See United States v. Scallion, 533 F.2d 903, 913 (5th Cir. 1976); United States v. Edwards, 488 F.2d 1154, 1160 (5th Cir. 1974). Third, appellants' objection to their inability to call other co-defendants as witnesses fails because they did not meet the requirements outlined in United States v. Cochran, 499 F.2d 380 (5th Cir. 1974), cert. denied, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 825 (1975):
 
 
 15
 (1) the testimony must be exculpatory in effect; (2) the testimony must be more than purely cumulative, or of negligible weight or probative value; and (3) there must be a likelihood that the co-defendant(s) will be willing to testify if the (defendants are) tried separately.
 
 
 16
 Id. at 392, citing Byrd v. Wainwright, 428 F.2d 1017, 1020-21 (5th Cir. 1970). Finally, "that a separate trial might have offered (appellants) a strategic advantage over a joint trial does not suffice to demonstrate the unfairness of the joint trial." United States v. Clark, 480 F.2d 1249, 1253 (5th Cir.), cert. denied, 414 U.S. 978, 94 S.Ct. 301, 38 L.Ed.2d 222 (1973); see United States v. Perez, 489 F.2d 51, 67 (5th Cir. 1973), cert. denied, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974).
 
 
 17
 V. Search and Seizure of Narcotics During Arrest
 
 
 18
 On July 14, 1974, acting on information supplied by a government informant, federal agents observed Chandler and Cravero, for whom arrest warrants were then outstanding,[11] and Willets arrive at a restaurant at 7:00 p. m. for a meeting with the informant. After the meeting, Chandler, Cravero, and Willets left the restaurant and drove to Cook's house. Agents followed them and placed the house under surveillance beginning at approximately 9:30 p. m. At 1:15 a. m., two agents, with arrest warrants for Chandler, Cravero, and a third man named Troise, knocked on the front door of Cook's house, identified themselves, and announced that they had arrest warrants. A short time later, Cook opened the door; and after a short exchange she shouted, "Hey, you guys, the police." The agents immediately entered, without permission, saw Cravero in the living room, and arrested him. They also noticed Chandler standing in the doorway to the master bedroom within reach of a pistol. As they arrested Chandler and confiscated the pistol, they heard scuffling sounds coming from an adjacent bathroom. Cook sought to prevent the agents from entering the bathroom without a search warrant, but they announced that they had an arrest warrant for Troise, a fugitive whom they claimed to believe to be hiding in the house. Entering the bathroom with weapons drawn,[12] the agents first observed Willets leaning into the shower stall and then saw a metal tray containing a large quantity of white powder that proved to be cocaine on the shower floor in plain view and paraphernalia used in the processing and packaging of narcotics[13] on the counter next to the sink. After checking the shower stall unsuccessfully for Troise, the agents seized the cocaine and paraphernalia.
 
 
 19
 Cook, Chandler, Cravero, and Willets challenge this seizure[14] on the following grounds: (1) the police unreasonably delayed execution of their arrest warrants so as to use them as a pretext to search Cook's house at a time when narcotics were to be found; (2) absent exigent circumstances, the police could not execute arrest warrants at the residence of a third party not named in the warrants even if there was probable cause to believe that the subjects of the warrants were on the premises; and (3) the police conducted an improper housewide exploratory search after arresting Cravero and Chandler, there being no probable cause to believe either that (a) the third person named in the arrest warrants, Troise, was present at Cook's house, or that (b) any unknown third person posed a threat to the agents' physical safety.
 
 
 20
 (1) Unreasonable delay in executing the arrest warrant.
 
 
 21
 First, appellants complain that the police had numerous opportunities to arrest Cravero and Chandler before their arrival at Cook's house and arguably could have waited again until after they left the house. This circuit has held, however, relying on Hoffa v. United States, 385 U.S. 293, 310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), that a suspect has no constitutional right to be arrested earlier than the police choose, since the authorities may not be forced to halt an investigation once they have probable cause to arrest but before they have evidence necessary to support a conviction. United States v. Palazzo, 488 F.2d 942, 948 (5th Cir. 1974); Koran v. United States, 469 F.2d 1071 (5th Cir. 1972) (per curiam).[15] While delaying an arrest as a pretext to apprehend a suspect when he has evidence in his possession may be constitutionally questionable,[16] we need not reach that issue since no evidence of pretext is present here. The agents justifiably refrained to protect their informant's identity from arresting Chandler and Cravero at the restaurant. They did not know appellants' destination after the group left the restaurant. Nor had the officers especial reason to expect to find cocaine in Cook's house.[17] The agents entered to execute their warrants only after realizing that Cravero suspected the informant's true role[18] and concluding that the suspects intended to remain inside indefinitely.[19] Thus, the delay was reasonable and fully justified.
 
 
 22
 (2) Execution of arrest warrant on premises of third party.
 
 
 23
 Second, appellants insist that the police could not execute their arrest warrants on Cravero and Chandler by entering Cook's residence. As the Eighth Circuit recently noted in Rice v. Wolff, 513 F.2d 1280, 1292 n. 7 (8th Cir.), aff'd sub nom. Stone v. Powell, --- U.S. ----, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), what requirements must be satisfied before policemen without a search warrant may conduct a search of a third person's private home for a suspect for whom they have a valid arrest warrant are unsettled.[20] All circuits that have considered the question,[21] including this one,[22] agree that at minimum there must be probable cause to believe that the suspect is within the dwelling, but whether there must be exigent circumstances as well is an open question.[23] Since no exigent circumstances are present in this case,[24] we must now address that issue.
 
 
 24
 The opinions of other circuits that have faced this issue do not speak with one voice.[25] We think it clear, however, that in addition to probable cause to believe that the suspect is inside, there must be exigent circumstances to support an entry to make a warranted arrest in a third party's home. We think so because in the nature of things nothing in the process of procuring an arrest warrant for A considers or affords any protection to the entirely distinct fourth amendment right of B, into whose premises A may wander perhaps after the arrest warrant issues not to have B's premises invaded and ransacked for A without either a warrant or one of the customary excuses for its absence. As a general rule, before entering a specific place to conduct a search for "objects," police officers must obtain a search warrant, Agnello v. United States, 269 U.S. 20, 32-33, 46 S.Ct. 4, 70 L.Ed. 145 (1925), which thereby insures a prior judicial determination that there is probable cause to believe that the object sought is within the place to be searched, Jones v. United States, 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). In contrast, no such determination need be made before an arrest warrant issues. Such a warrant requires only a judicial determination that there is probable cause to arrest a named person for a certain offense, without consideration of the place in which the arrest is to be made.[26] An arrest warrant, therefore, in and of itself imposes few or no limitations on the power of police to enter private homes in search of suspects.
 
 
 25
 But arbitrary invasion of the privacy of the home or dwelling is the " chief evil" to which the fourth amendment is directed.[27] To prevent such invasions, the Framers interposed a search warrant requirement between private citizens and the police, reflecting a belief that, absent special circumstances, the decision whether the right to privacy should yield to a right to enter and search a particular place should rest not with the policeman, but with a disinterested judicial officer whose approval for a search could apply only to a particular place and after a showing of probable cause.[28] Only in certain carefully-defined classes of cases is a warrantless search permitted.[29] This preference for a prior judicial determination should control a contemplated entry of a third party's home, regardless of what is sought. While the ultimate objective of an arrest entry is an arrest, the arrest can only be effected if the subject is first found, and thus a search is a necessary factual prerequisite to the possible arrest. A search warrant would be required, in the normal case and absent some exception, to enter a residence to search for a stolen pet or other object seen carried into it. We are unable to see a distinction valid for fourth amendment purposes between entry to search for such an object and entry to apprehend a guest. Consequently, logic demands that the rules governing searches should apply with equal force to an arrest entry into a third party's home. If the policeman has probable cause to believe that a suspect he wishes to arrest is inside the home, he can demonstrate this to a magistrate and obtain a search warrant for the suspect. If he fails to obtain a warrant, then an arrest entry without a search warrant will be permissible only if exigent circumstances[30] or some other established exception to the warrant requirement obtains. Any other result raises the spectre of police circumvention of the search warrant requirement by using an arrest warrant as carte blanche to search any and every home in which they can claim probable cause to believe a suspect may be concealed.[31] Furthermore, a requirement of exigent circumstances will not unduly burden law enforcement officials or create additional danger, since such factors are given considerable weight in the exigent circumstances determination.[32]
 
 
 26
 Although we thus agree with appellants that the entry was illegal, their conclusion that the subsequently seized drugs and paraphernalia must be suppressed does not follow ineluctably from the illegality of the entry. Obviously, an illegal entry does not vitiate the arrests pursuant to concededly valid arrest warrants. If the arrests here had been illegal e. g., without a warrant or probable cause then use of the fruits of those arrests would have entitled appellants to invoke the exclusionary rule. See Edwards v. Swenson, 454 F.2d 1106, 1111 (8th Cir.), cert. denied, 406 U.S. 909, 92 S.Ct. 1619, 31 L.Ed.2d 820 (1972) (citing Fifth Circuit and other cases). But the arrests, if not the entry, were proper. The arrest warrants represent judicial sanction of the deprivations of the suspects' liberties. Possession of the warrants was a completely self-validating justification for the arrests regardless of the circumstances under which the police reached the location where they served the warrants. To hold otherwise would mean that a suspected felon could claim what amounts to temporary sanctuary in the home of another and would require us to contemplate with equanimity the prospect of a section 1983 suit by him against the officers who arrested him on a valid warrant, which seems self-evidently absurd. Thus, the arrests are valid, though the method of effecting them be not.[33]
 
 
 27
 The Supreme Court has held that items seized in warrantless searches incident to lawful arrests are admissible. Such searches are considered " reasonable" in fourth amendment terms because they are necessary to protect the arresting officers' safety and prevent the concealment or destruction of evidence. See Chimel v. California, 395 U.S. 752, 762-64, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). But the admissibility of items seized pursuant to other warrantless search exceptions, such as the "plain view" or "hot pursuit" doctrines, has turned on "an extraneous valid reason for the officer's presence." Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971).[34] See also id. at 465-66, 91 S.Ct. 2022. Thus, we must examine the reason for the officers' presence in the place where they made the seizures because the admissibility of evidence obtained in the warrantless search depends on whether the items were seized incident to the valid arrest or merely as part of an exploratory search of the premises after the illegal entry.
 
 
 28
 (3) Exploratory search.
 
 
 29
 Although Chandler does not seek suppression of the pistol found on his person,[35] all appellants object to the drugs and paraphernalia found in plain view after the officers' charge on the bathroom. The police attempt to justify their presence in the bathroom on two grounds: that they had probable cause to believe that Troise, the third suspect named in their arrest warrants, was present in the house, and that they needed to conduct a safety search to prevent danger to the arresting officers. We need not consider their belief in Troise's presence,[36] because their bathroom entry can survive as a protective sweep to avoid threats from unknown persons. The Supreme Court in Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1965), declared that although an arresting officer can search the suspect's person for weapons and evidence that could be destroyed, as well as the immediate area where the arrestee could grab a weapon, the policeman cannot routinely search other rooms absent some exception to the search warrant requirement. This circuit has recognized such an exception in a housewide search after a proper arrest for the purpose of making a cursory safety check when "the circumstances (provide), at the least, probable cause to believe that a serious threat to safety (is) presented." United States v. Smith, 515 F.2d 1028, 1031, (5th Cir. 1975) (per curiam) ("a serious and demonstrable potentiality for danger").[37] The heinous nature of the crimes, the lateness of the hour, the arrests of Cravero and of Chandler in possession of a loaded pistol, and the suspicious noises coming from the bathroom more than justified the agents' cursory search to secure the immediate area and to insure their own physical safety. Since the agents were properly inside the bathroom, their seizure of the cocaine and paraphernalia can be justified on two separate and independent grounds. First, the officers observed the items in "plain view" in a room that they had properly entered.[38] Second, they observed Willets in the process of committing the crime of possession of narcotics, which gave them grounds to arrest her and seize the items here in question since they were in an area within her control.[39] Thus, the items were properly admitted, despite the illegal entry.
 
 
 30
 (4) The limits of our holding.
 
 
 31
 Having said so much, we do not think it amiss to indicate something of what we do not hold.
 
 
 32
 We do not countenance the original, warrantless entry of Cook's residence, nor would we suffer admission of the fruits of an unlimited, warrantless search of her residence: matter discovered, for example, in a room remote from the scene of the arrests or as a result of ransacking bureau drawers, or the like. But being unable to find the arrests by warrant of Chandler and Cravero invalid, we are likewise unable to condemn as evidence items seized as a result of reasonable and appropriate actions taken by the police occasioned by and directly resulting from these valid arrests.
 
 
 33
 We do, in other words, no bold work here. Rather, we seek to lay course between the overhanging absurdity of the sporting theory of justice on the one
 
 
 34
 side and the menace of police irruption into residences on
 
 
 35
 the other. VI. Hearsay Declarations of the
 
 Previously Acquitted Co-Conspirator
 
 36
 Appellants Chandler and Willets attack as hearsay a witness' damaging account of statements made by an alleged co-conspirator who had been acquitted in an earlier trial of this conspiracy. A witness can testify to declarations made to him by a co-conspirator only if the government by independent evidence establishes a prima facie case of the existence of a conspiracy and introduces at least "slight evidence" to connect with the conspiracy both the declarant and the defendant against whom the statement is introduced, which requires "a showing of a likelihood of an illicit association between the declarant and the defendant," United States v. Lawson,523 F.2d 804, 806 (5th Cir. 1975); Park v. Huff, 506 F.2d 849, 859 (5th Cir.) (en banc), cert. denied, 423 U.S. 824, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975); see United States v. Oliva, 497 F.2d 130, 132-33 (5th Cir. 1974). Appellants, who concede that the prosecution met its initial burden, argue that an alleged co-conspirator's prior acquittal deprives the trial judge of any right to find that the government has made the requisite showing of that person's participation in the conspiracy. Other circuits have held, and we agree, that after the government has made the requisite showings, the admission of testimony under the co-conspirator exception to the hearsay rule is not rendered retroactively improper by subsequent acquittal of the alleged co-conspirator. See United States v. Jacobs, 475 F.2d 270, 284 n.28 (2d Cir.), cert. denied, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973); Kamansuke-Yuge v. United States, 127 F.2d 683, 689 (9th Cir.), cert. denied, 317 U.S. 648, 63 S.Ct. 43, 87 L.Ed. 522 (1942).
 
 
 37
 We see no reason for a differing rule when acquittal occurs before the hearsay testimony is admitted. The earlier acquittal signifies that the government failed to prove the declarant a participant in the conspiracy beyond a reasonable doubt; this circumstance in no way forecloses the government, in a subsequent case, from establishing by slight or even preponderant evidence the declarant's participation. The independent "slight evidence" necessary to meet the threshold admissibility requirement means only that the evidence would be sufficient to support a finding by the jury that the declarant was a co-conspirator,[40] obviously not inconsistent with an earlier jury's inability to so determine beyond a reasonable doubt.[41] The problem is at bottom one of judicial estoppel. The declarant's earlier acquittal, to be sure, forecloses a redetermination of his guilt because of considerations of double jeopardy and may also properly be said to establish finally that he cannot be found beyond reasonable doubt to have been a conspirator. But it no more forecloses a determination, even by a preponderance of the evidence,[42] that he was one than a subsequent acquittal, and this is more than is required for admission of his declarations.
 
 
 38
 VII. Prosecutor's Cross-Examination of Defense Witness
 
 
 39
 Appellant Siegal objects that the prosecution improperly attacked Siegal's character by eliciting from a defense witness that he had once represented Siegal. But neither the question nor the witness' response that he had represented Siegal "(o)ne time that stands out in my mind" and also possibly in traffic court in any way suggests representation in a criminal manner or prior criminal activity. Furthermore, the questions were obviously aimed at revealing possible bias because of a prior business relationship. " Partiality, or any acts, relationships or motives reasonably likely to produce it, may be proved to impeach credibility." C. McCormick, Handbook of the Law of Evidence § 40, at 78 (2d ed. E. Cleary 1972); see Aetna Insurance Co. v. Paddock, 301 F.2d 807, 812 (5th Cir. 1962), quoted in Ellis v. Capps, 500 F.2d 225, 227 (5th Cir. 1974).
 
 VIII. New Trial
 
 40
 Appellant Cook requests a new trial[43] based on testimony given in an unrelated case seven months after her trial by one Andries, a government informer-witness who there asserted that federal agents wanted him to give false testimony by saying that Cook knew that the cocaine was being brought to her house the night of the arrests when in fact she neither knew nor consented. As we noted in United States v. Jacquillon, 469 F.2d 380 (5th Cir. 1972), cert. denied, 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973), in order to justify a new trial on the ground of newly discovered evidence,
 
 
 41
 the rule is that the evidence must in fact be newly discovered and that the movant must have exercised due diligence in discovering the evidence. It must not be merely cumulative or impeaching. Furthermore, the new evidence must be material and be such that it would probably produce an acquittal in a new trial.
 
 
 42
 Id. at 388. Cook fails to meet these requirements because this "evidence" is not newly discovered. Appellant's counsel admits in his brief that eight months previously he had spoken by telephone to Andries, who at the time was in the protective custody of the United States Marshal,[44] and obtained the same information. He insists that this evidence is nonetheless newly discovered because only after he received a copy of Andries' sworn testimony in the later trial for use as possible impeachment evidence did he have the opportunity to insure that Andries, if called as a defense witness, would testify to the same story he had previously related by telephone.[45] But we cannot agree that lack of assurance that a potential witness will testify as planned makes the expected testimony newly discovered evidence once that assurance is received. The requirements for a new trial based on newly discovered evidence are clear, and Cook has failed to meet them.
 
 
 43
 Cook also demands a new trial based on a claimed violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by the prosecution's failure to reveal prior to Cook's trial a statement by Andries to the prosecutor that the information Andries had previously furnished the government about Cook was false. But appellant's attorney conceded that he had obtained the same information prior to trial, so the prosecutor can hardly be charged with suppressing it. In the context of the Brady requirement, "any allegation of suppression boils down to an assessment of what the State knows at trial in comparison to the knowledge held by the defense." Giles v. Maryland, 386 U.S. 66, 96, 87 S.Ct. 793, 808, 17 L.Ed.2d 737 (1967) (White, J., concurring). The purpose of Brady is to assure that the accused will not be denied access to exculpatory evidence known to the government but unknown to him. Irrespective of whether the statement here was exculpatory evidence under Brady, a question we do not reach, there is no Brady violation when the accused or his counsel knows before trial about the allegedly exculpatory information and makes no effort to obtain its production.[46]
 
 
 44
 AFFIRMED.
 
 
 45
 ON PETITIONS FOR REHEARING AND PETITIONS FOR REHEARING EN BANC
 
 GEE, Circuit Judge:
 
 46
 In their petitions for rehearing, appellants Cook, Cravero, Chandler and Willets have questioned the logic of our panel's holding that the arrests made after an illegal entry of Ms. Cook's home were somehow made legal because of valid arrest warrants. Upon reconsideration of this seeming paradox, we find that we erred in requiring probable cause plus exigent circumstances to validate the entry without a search warrant.
 
 
 47
 As early as Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925), the Supreme Court recognized that an entry to execute an arrest warrant is an exception to the requirement of a search warrant to intrude into a home. See also United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1957); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). In Ker v. California, the Court quoted with approval Justice Traynor's opinion in People v. Maddox, 46 Cal.2d 301, 306, 294 P.2d 6, cert. denied, 352 U.S. 858, 77 S.Ct. 81, 1 L.Ed.2d 65 (1956):
 
 
 48
 "(W)hen an officer has reasonable cause to enter a dwelling to make an arrest and as incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable."
 
 
 49
 374 U.S. 23, 39, 83 S.Ct. 1623, 1633, 10 L.Ed.2d 726 (1963).
 
 
 50
 The law of this circuit, which our panel opinion overlooked, is that when an officer holds a valid arrest warrant and reasonably believes that its subject is within premises belonging to a third party, he need not obtain a search warrant to enter for the purpose of arresting the suspect. United States v. James, 528 F.2d 999, 1017 (5th Cir. 1976); Rodriguez v. Jones, 473 F.2d 599, 605-06 (5th Cir.), cert. denied, 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973). The test is properly framed in terms of reasonable belief. Probable cause is essentially a concept of reasonableness, but it has become a term of art in that it must always be determined by a magistrate unless exigent circumstances excuse a search warrant. When one says "probable cause," therefore, one also says either "magistrate" or "exigent circumstances." Reasonable belief embodies the same standards of reasonableness but allows the officer, who has already been to the magistrate to secure an arrest warrant, to determine that the suspect is probably within certain premises without an additional trip to the magistrate and without exigent circumstances.[1] Accord United States v. Brown, 151 U.S.App.D.C. 365, 467 F.2d 419 (1972); United States v. McKinney, 379 F.2d 259 (6th Cir. 1967). The reasonableness of the officer's judgment is always subject to judicial review, of course.
 
 
 51
 Because entry to execute an arrest warrant is treated by this court as an exception to the requirement of a search warrant,[2] we withdraw that portion of our panel opinion which held the entry into Ms. Cook's home illegal. Having personally observed Cravero and Chandler enter the Cook residence, the officers' belief that the suspects were within those premises was clearly reasonable, and their entry to execute arrest warrants on those two individuals was therefore legal and the arrests valid. The protective sweep incident to the arrests was permissible for the reasons noted in our earlier opinion.
 
 
 52
 The petition for rehearing is DENIED, and no member of this panel nor judge in regular active service on the court having requested that the court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12), the petition for rehearing en banc is DENIED.
 
 
 
 [1]
 The indictment charged, inter alia, conspiracy to import and possess cocaine and marijuana with intent to distribute, in violation of 21 U.S.C. §§ 846, 963 (1970) (Count I); importation of cocaine and marijuana in violation of 18 U.S.C. § 2 (1970) and 21 U.S.C. § 952(a) (1970) (Count II); possession of cocaine with intent to distribute, in violation of 18 U.S.C. § 2 (1970) and 21 U.S.C. § 841(a)(1) (1970) (Count IV); and engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848 (1970) (Count V). Appellants were convicted as follows: Cravero, Counts I, II, IV, and V (consecutive sentences on the first three counts; concurrent sentence on Count V); Chandler, Counts I, II, IV, and V (same as Cravero); Willets, Counts I, II, and IV (concurrent sentences); Siegal, Counts I and II (concurrent sentences); Miller, Counts I and II (concurrent sentences); and Cook, Count IV
 
 
 [2]
 Which reads as follows:
 (a) The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought. (emphasis added)
 
 
 [3]
 Accord, United States v. Agrusa, 520 F.2d 370, 371-72 (8th Cir. 1975)
 
 
 [4]
 Morris dealt only with failure to specify the statutes, but its language, rationale, and supporting authority extend to parties as well, and we so hold
 
 
 [5]
 Defendants would distinguish these decisions on the grounds that in those cases there was sufficient proof of other violations and substantial income derived from those violations. But there is adequate proof that defendants in this case were "in a supervisory position," that they derived substantial income from these operations, and that there were continuing violations. Furthermore, whether there is proof of these elements concerns sufficiency of the evidence, not vagueness of the statute
 
 
 [6]
 By police officers acting pursuant to a search warrant obtained several hours after the arrest
 
 
 [7]
 Cf. United States v. Garza, 531 F.2d 309, 310-11 (5th Cir. 1976) (section 841(a) is violated by constructive possession, which may be shared with others and proved by circumstantial evidence). See also United States v. Harold, 531 F.2d 704 (5th Cir. 1976) (per curiam)
 
 
 [8]
 See note 1 supra
 
 
 [9]
 Which reads as follows:
 Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count. (emphasis added)
 
 
 [10]
 The trial judge carefully instructed the jury to consider separately the evidence concerning each defendant on each count. Furthermore, he advised the jury during trial and in final instructions about the limitations on the use of co-conspirators' hearsay declarations
 
 
 [11]
 This was the first time that the agents had located them since obtaining the warrants
 
 
 [12]
 Since Troise had a reputation for violence and was reportedly heavily armed
 
 
 [13]
 Much of which bore cocaine residue
 
 
 [14]
 Appellants Siegal and Miller also object to the seizure, but since neither was present at the home at the time of the seizure and neither claimed ownership or possession of the confiscated narcotics and paraphernalia, we agree with the lower court that neither had the reasonable expectation of freedom from government intrusion on the premises necessary to give either standing to challenge the search and seizure. See Combs v. United States, 408 U.S. 224, 227, 92 S.Ct. 2284, 33 L.Ed.2d 308 (1972); United States v. Hunt, 505 F.2d 931, 934-40 (5th Cir. 1974), cert. denied, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975); United States v. Colbert, 474 F.2d 174, 176-77 (5th Cir. 1973) (en banc)
 
 
 [15]
 Although both Palazzo and Koran concerned pre-warrant arrests, the distinction is not critical. See generally United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, 613-14 & nn. 4-5 (1976) (Powell, J., concurring)
 
 
 [16]
 See United States v. Palmer, 435 F.2d 653, 655 (1st Cir. 1970) (dicta) (by implication); Amador-Gonzalez v. United States, 391 F.2d 308, 314-15 (5th Cir. 1968) (impermissible for narcotics officers to make traffic arrest as pretext to search defendant's car incident to arrest). But cf. United States v. Frick, 490 F.2d 666, 670-71 (5th Cir. 1973), cert. denied, 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974) (suggesting that a "staged arrest" after indictment to apprehend defendant when he has evidence in his possession is permissible so long as the arrest occurs within a reasonable time after indictment, but noting that the evidence failed to show that the arrest was staged)
 
 
 [17]
 The informant had never ascertained the hiding place of the cocaine
 
 
 [18]
 Based on a phone conversation at 11:20 that night in which Cravero told the informant that he had detected the presence of surveillance units at the restaurant and intimated that he was aware of the informant's duplicity
 
 
 [19]
 Moreover, it seems that had the officers intended an exploratory search, they would have shut off the house water supply before entering, a common measure against disposal of contraband
 
 
 [20]
 Cf. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, 614 (1976) (Stewart, J., concurring); id. at 614 & n. 7, 96 S.Ct. 820 (Powell, J., concurring); Rodriguez v. Jones, 473 F.2d 599, 605-06 (5th Cir.), cert. denied, 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973) (dicta) (action for damages under § 1983; exigent circumstances present). See also United States v. Watson, supra, 423 U.S. 411, 96 S.Ct. 820, 48 L.Ed.2d at 605 n. 6
 
 
 [21]
 Rice v. Wolff, 513 F.2d 1280, 1292 (8th Cir.), aff'd sub nom. Stone v. Powell, --- U.S. ----, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); Fisher v. Volz, 496 F.2d 333, 338-42 (3d Cir. 1974); United States v. Brown, 151 U.S.App.D.C. 365, 467 F.2d 419, 423-24 (D.C.Cir. 1972); United States v. McKinney, 379 F.2d 259, 263 (6th Cir. 1967); Lankford v. Gelston, 364 F.2d 197, 202-03 n. 6 (4th Cir. 1966) (en banc) (citing cases). See also United States v. Phillips, 497 F.2d 1131, 1135 (9th Cir. 1974) (warrantless entry)
 
 
 [22]
 E. g., United States v. James, 528 F.2d 999, 1017 (5th Cir. 1976)
 
 
 [23]
 In United States v. James, 528 F.2d 999 (5th Cir. 1976), after appearing to answer this question in the negative, the court recognized the presence of exigent circumstances in denying the petition for rehearing
 
 
 [24]
 The government argues that the possibility of escape, the grave nature of the offense, and the suspects' propensity for violence supplied the requisite exceptional circumstances. But Chandler and Cravero were pent in a house surrounded by police. And danger to third persons cannot support the entry here because there was no proof of danger; furthermore, all three suspects named in the warrant had been together and much more vulnerable both at the restaurant and in the car. The police correctly suggest that the delay in executing the warrants was necessary to protect their informant's identity; but while this justifies the initial delay, it does not make exigent the need to arrest Chandler and Cravero while they remained inside the house. Although the arrest may also have been delayed and understandably so to give the informant time to determine the location of the cocaine, this could not supply sufficient justification for the police entering Cook's house when they did, unless perhaps they had feared that evidence was threatened with destruction. See Schmerber v. California, 384 U.S. 757, 770-71, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). That possibly dangerous felons who are guests in a private home suspect earlier police surveillance is not enough to present exigent circumstances when the suspects are unaware of current police presence
 
 
 [25]
 The Third Circuit requires probable cause and exigent circumstances. Government of the Virgin Islands v. Gereau, 502 F.2d 914, 928-29 (3d Cir. 1974), cert. denied, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975); see Fisher v. Volz, 496 F.2d 333, 338-39 (3d Cir. 1974). The Fourth Circuit has approached but avoided the issue. Lankford v. Gelston, 364 F.2d 197, 205-06 (4th Cir. 1966). The District of Columbia Circuit (per Justice Clark) in United States v. Brown, 151 U.S.App.D.C. 365, 467 F.2d 419, 423-24 (1972), a holding that probable cause to believe the suspect inside a third party's dwelling is sufficient, makes no explicit reference to exigent circumstances; but a Third Circuit decision correctly points out that "(Brown's) discussion reveals that such circumstances were considered in determining the existence of probable cause," Fisher v. Volz, supra at 341 n.12. The Sixth Circuit in United States v. McKinney, 379 F.2d 259, 263 (6th Cir. 1967), declared that "there is good reason to hold that the issuance of an arrest warrant is itself an exceptional circumstance," but this statement must be considered in context since the police there had looked unsuccessfully for the suspect before having probable cause to believe him present in someone else's house. And the court implied that more than mere presence is required. Id. at 263 n.3. See also Note, The Neglected Fourth Amendment Problem in Arrest Entries, 23 Stan.L.Rev. 995 (1971) (concerned mainly with warrantless arrests)
 
 
 [26]
 See, e. g., Fed.R.Crim.P. 4(a): "If it appears from the complaint . . . that there is probable cause to believe that an offense has been committed and that the defendant has committed it, a warrant for the arrest of the defendant shall issue to any officer authorized by law to execute it."
 A warrantless arrest in a public place of one suspected of a felony requires a similar determination, but only by a police officer. See United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, 603-09 (1976). See also Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).
 
 
 [27]
 United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); see Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948)
 
 
 [28]
 McDonald v. United States, 335 U.S. 451, 455-56, 69 S.Ct. 191, 93 L.Ed. 153 (1948). As Justice Jackson noted in Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948):
 The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. . . . The right of officers to thrust themselves into a home is . . . a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.
 
 
 [29]
 E. g., Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)
 
 
 [30]
 An obvious example of which would be entry by one believed dangerous into the home of another believed by the police not to be in league with him. Another, since objects do not act and people do, would be a reasonable fear by the police that the suspect in the house might be summoning reinforcements by telephone or other means of communication, or ordering retaliation on an informer or other criminal activity by such means
 
 
 [31]
 Cf. Chimel v. California, 395 U.S. 752, 767, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)
 
 
 [32]
 Cf. Dorman v. United States, 140 U.S.App.D.C. 313, 435 F.2d 385, 392-93 (1970) (en banc) (giving examples of exigent circumstances). We need not decide here whether our concern for balancing the needs of effective law enforcement with the potential for police abuse requires a similar rule governing an arrest entry into the home of a person named in a warrant, although we have previously implied that mere probable cause to believe the suspect present justifies such an entry. United States v. Jones, 475 F.2d 723, 729 (5th Cir. 1973) (dicta) (defendant conceded that arrest was lawful and challenged only the search incident to his arrest). See generally United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, 605 n.6 (1976)
 
 
 [33]
 Cf. United States v. Cisneros, 448 F.2d 298, 303 n.6 (9th Cir. 1971)
 
 
 [34]
 A planned, warrantless intrusion to seize items hoped to be found in plain view, fear of which motivates us to require the presence of exigent circumstances for the entry, has never been permitted. Coolidge, 403 U.S. at 469-71 nn.26-27, 91 S.Ct. 2022
 
 
 [35]
 The seizure of Chandler's ready-to-hand pistol was entirely reasonable; indeed, a failure to do so would have been ludicrous. This seizure is the paradigm of why a warrantless search incident to a legal arrest is acceptable. To rule the pistol inadmissible had we been asked to do so would require us to hold either that the arrest itself was invalid because the officers who made it on a proper warrant were where they should not have been when they executed it or to hold that though they had a "right" to seize the pistol pursuant to a valid arrest and in reason could have done nothing less, still the pistol must be suppressed as evidence because it was a fruit of the original improper entry. Neither holding seems to us one appropriate to the real world, and we would decline to make either
 
 
 [36]
 Even were we to agree with the government that the officers had probable cause to believe Troise present, this would not cure the illegal entry, although the subsequent seizure would still be permissible based not on the plain-view doctrine, since without exigent circumstances the officers were still not properly in the bathroom, cf. note 38 infra, but on the ground that the items were in possession of a person the officers observed in the process of committing a crime. Compare text at note 39 infra
 
 
 [37]
 Accord, McGeehan v. Wainwright, 526 F.2d 397, 399-400 (5th Cir. 1976) (per curiam) (surveying cases); United States v. Looney, 481 F.2d 31, 33 (5th Cir.), cert. denied, 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 476 (1973) (in addition to a threat to safety, the agents must be looking for dangerous people, not things)
 
 
 [38]
 Something found in the living room in plain view would not have been admissible because the officers' presence there was improper. Only the legal arrest of Cravero and Chandler, followed by scuffling sounds, created the "extraneous valid reason" that in turn validated the safety check of the bathroom
 
 
 [39]
 See Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); United States v. Jones, 475 F.2d 723, 727-28 (5th Cir. 1973). Since the security-search rationale permits us to approve the bathroom entry, we need not consider here the broader issue that the concurring opinions in United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, 614 (1976) (Stewart and Powell, JJ., concurring in separate opinions), assert was left open by the majority opinion: whether or when the police can lawfully make a warrantless arrest in a private place
 
 
 [40]
 Cf. United States v. Nixon, 418 U.S. 683, 701 & n.14, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)
 
 
 [41]
 Appellants' additional argument that some of the acquitted co-conspirator's statements were themselves hearsay is inconsequential since all statements were originally uttered and repeated by participants of the conspiracy in furtherance of it
 
 
 [42]
 See generally 50 C.J.S. Judgments § 752, at 272-73 (1947)
 
 
 [43]
 We consolidated with the main cause Cook's appeal from the lower court's denial of her motion for a new trial
 
 
 [44]
 The prosecution at one point apparently intended to call Andries as a witness in Cook's trial but did not do so
 
 
 [45]
 Although Cook's counsel had taped the telephone conversation, he claimed that he could not use transcripts of the taping to impeach Andries for fear of being prosecuted under a Florida statute, Fla.Stat.Ann. § 934.03 (1973), that appears to prohibit one not a law-enforcement official from taping a telephone conversation without the consent of all parties to the conversation. Andries testified, however, that he had consented to the taping
 
 
 [46]
 Accord, Maglaya v. Buchkoe, 515 F.2d 265, 268 (6th Cir.), cert. denied, 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1975); United States v. Ruggiero, 472 F.2d 599, 604 (2d Cir.), cert. denied, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973)
 
 
 [1]
 One explanation for not requiring a search warrant to enter a third person's home to execute an arrest is that there is no need to particularize the search the arrest warrant has already done that. There is not the same danger of the "general writ" which is the reason for requiring that a search warrant describe what specific items police are allowed to search for
 
 
 [2]
 The exception is limited to protect against a general police canvassing of the homes of all of the suspect's acquaintances. There must be a reasonable belief that the person named in the arrest warrant is inside; furthermore, the entry is valid only for the purpose of executing the arrest and not for conducting a general search