**UNITED STATES of America, Appellee,**

v.

**Maurice HARPER, Appellant.**

**No. 76–1004.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 15, 1976.

Decided Jan. 3, 1977.

Rehearing Denied Feb. 23, 1977.

Richard L. Hathaway, Asst. U. S. Atty., Kansas City, Kan. (E. Edward Johnson, U. S. Atty., Topeka, Kan., on the brief), for appellee.

John C. Humpage, Topeka, Kan., for appellant.

Before HOLLOWAY and BARRETT, Circuit Judges, and CHILSON,* District Judge.

BARRETT, Circuit Judge.

Maurice Harper (Harper) appeals his jury convictions of possession of heroin with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1) and possession of marijuana in violation of 21 U.S.C.A. § 844(a).

On July 15, 1975, Agent Eugene Dempsey of the Drug Enforcement Administration (DEA), having received a fugitive arrest warrant for one Renita Black (Black), proceeded to a residence at 4022 Minnie, Kansas City, Kansas, in an effort to locate and arrest her. That same day, Dempsey had been notified that an FBI agent had received information from a reliable informant that Black was staying with Harper. The informant did not know Black's address but he was able to provide the agent with her phone number. Dempsey inquired of the phone company, which in turn, traced the phone number to 4022 Minnie. Several weeks earlier, Dempsey had received information from reliable informants that Black was staying with Harper and one Frank Jackson (Jackson) and that she had been

* Of the District of Colorado, sitting by designation.

seen with them in Jackson's car. The informants did not then have knowledge of their residence.

Upon arriving at the 4022 Minnie residence, Dempsey was admitted by Jackson after he identified himself and related that he had a warrant for Black's arrest. After admitting Dempsey, Jackson proceeded up the stairs and hollered "Maurice, it's the police." Dempsey followed Jackson up the stairs. When Dempsey reached the top of the stairs, he stepped into a room and there observed Harper picking up an ashtray containing vegetable matter. When Harper was questioned, he acknowledged that the vegetable matter was marijuana and that he was smoking it. Dempsey observed Harper drop a sack which contained a brown substance he believed to be heroin, and which subsequently field tested as heroin.

Immediately after the above occurrences, the residence was secured while a search warrant was obtained to search the premises for "certain property, namely stimulant, depressant or hallucinogenic drugs and weapons." In his affidavit in support of the issuance of the search warrant Dempsey deposed, *inter alia:*

. . . I asked Harper what he was doing with the marijuana and he stated "smoking it." I took the marijuana from Harper and told him to stand across the room. At this time I noticed Harper holding a small brown paper and attempting to hide it behind the chair. I asked Harper what was in the sack and he stated nothing and dropped it on the floor. I picked up the sack and found it to contain approximately one-half ounce of brown powdery substance which I believed to be heroin (the substance was later field tested with positive results). We then placed the individuals in custody and checked the rest of the residence for any additional persons. Upon opening a closet door, what was believed to be a semi-automatic weapon fell out of the closet onto the floor. All of the subjects were taken to the living room area and detained and I left the residence to obtain a search warrant.

The search warrant was issued. The search of the residence produced a jar of lactose (it was established that the diluent in all the heroin recovered was lactose); 28 tinfoil packets, each containing heroin 5.7% pure; a plastic bag of brown powder, containing heroin 8.6% pure; 73 tinfoil packets of brown powder, each containing heroin 4.5% pure; a record book of drug transactions; a large number of tinfoil squares of the type and size used to wrap heroin in; and a set of measuring spoons and a sifter of the type used for measuring and mixing illicit drugs.

The above evidence, together with the marijuana and heroin obtained from Harper during the initial search, was introduced in evidence by the Government. The Government also established that at the time he was searched, Harper had $1700 in cash on his person and that an additional $360 in cash was found on the coffee table adjacent to which he had been seated.

On appeal Harper contends the court erred in (1) denying his motion to suppress; (2) not going beyond the face of Dempsey's affidavit in support of the warrant; (3) permitting the introduction of oral statements he had made relative to his address being 4022 Minnie; (4) admitting certain writings; (5) refusing to instruct on simple possession; and (6) improperly instructing on possession.

I.

Harper contends the court erred in denying his pre-trial motion to suppress evidence allegedly illegally seized during the search of the 4022 Minnie residence. Harper contends that the initial search of the residence, during which Dempsey discovered 2.65 grams of marijuana which Harper was holding in an ashtray and a sack of heroin which Harper dropped, violated his rights under the Fifth Amendment to the United States Constitution. Harper argues that the search was invalid in that it did not fall within the exceptions to *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), i. e., the initial search was not incident to a valid arrest, the initial

search was not the result of a "hot pursuit," and said search was not the result of a voluntary uncoerced consent. Harper also argues that the unlawful nature of the initial search invalidated and tainted the subsequent search conducted pursuant to the search warrant, inasmuch as the information obtained during the initial search was the sole basis for the issuance of the search warrant.

In denying Harper's motion to suppress and in upholding the search and seizure in all respects the trial court found, *inter alia:*

In this particular case, after Jackson answered the door, Dempsey identified himself as a federal agent, displayed his badge, gave verbal notice of his authority and purpose to arrest Renita Black, all within the requirements of *Miller v. United States,* 357 U.S. 301. [, 78 S.Ct. 1190, 2 L.Ed.2d 1332]

He was admitted to the house, to the residence. It is irrelevant that Jackson may not have had the proprietary interest in the premises to give consent . . The legality of the officers' entry in the execution of an arrest warrant where they had reasonable grounds for believing that Renita Black might be there does not depend upon the existence of any consent for entry. In fact they were authorized to use all necessary and reasonable force in securing any entry.

Once they were legally in the house, and of course the court finds that they were legally there, they have a right to search it for the purpose of determining whether the person for whom they had the warrant was present.

\* \* · \* \* \* \*

Once they were lawfully there, which they were then, if any weapons, narcotics or other contraband were observed in plain view while the agents were searching for the person for whom they had an arrest warrant, of course these items could be lawfully seized.

There was absolutely no basis for a finding that there was any pretext on the part of the officers in getting in that house under any type of a subterfuge or anything of the kind in order to arrest or what later turned out to be the arrest of the defendant.

■ We hold that the court properly determined the agents' initial entry to be a lawful utilization of the arrest warrant for Black, and that the evidence seized at that time, and thereafter pursuant to the search warrant, was properly seized and admissible in evidence.

Harper fails to acknowledge the presence, validity, and efficacy of the arrest warrant for Black which was the genesis and impetus for the initial entry and search of the residence. The officers properly proceeded to the 4022 Minnie residence. They were armed with the fugitive arrest warrant for Black and reliable information that Black was staying with Harper and Jackson at that address. Their subsequent entry to ascertain Black's presence was proper:

. . . As a general rule, before entering a specific place to conduct a search for "objects," police officers must obtain a search warrant. *Agnello v. United States,* 269 U.S. 20, 32–33, 46 S.Ct. 4, 70 L.Ed. 145 (1925), which thereby insures a prior judicial determination that the object sought is within the place to be searched, *Jones v. United States,* 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). *In contrast, no such determination need be made before an arrest warrant issues. Such a warrant requires only a judicial determination that there is probable cause to arrest a named person for a certain offense, without consideration of the place in which the arrest is to be made.*[26]

[26] See e. g. Fed.R.Crim.P. 4(a):
"If it appears from the complaint . . . that there is probable cause to believe that an offense has been committed and that the defendant has committed it, a warrant for the arrest of the defendant shall issue to any officer authorized by law to execute it."
A warrantless arrest in a public place of one suspected of a felony requires a similar determination, but only by a police officer. See *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, 603–09 (1976). *See also Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).]

*An arrest warrant, therefore, in and of itself imposes few or no limitations on the power of police to enter private homes in search of suspects.* (Emphasis supplied.) *United States v. Cravero,* 545 F.2d 406 (5th Cir. 1976), at 646.

■ The entry into the residence was also proper under the law of Kansas which provides:

(3) All necessary and reasonable force may be used to effect entry upon any building or property or part thereof to make an authorized arrest.

K.S.A. 22–2405

■ In the absence of a contrary federal statute, as in the case at hand, the validity of an arrest is controlled by the law of the state where the arrest occurred. *United States v. Miller,* 452 F.2d 731 (10th Cir. 1971); *United States v. Alexander,* 346 F.2d 561 (6th Cir. 1965), *cert. denied,* 382 U.S. 993, 86 S.Ct. 575, 15 L.Ed.2d 480 (1966); Fed.Rules Crim.Proc. Rule 4, 18 U.S.C.A. *See also Keeny v. Swenson,* 458 F.2d 680 (8th Cir. 1972); *United States v. Morris,* 445 F.2d 1223 (8th Cir. 1971). Under Fed.Rules Crim.Proc., Rule 4(d)(2) expressly permits the execution of a warrant "at any place within the jurisdiction of the United States." The warrant has efficacy throughout the United States and constitutes authority for arresting the defendant wherever found.

■ Once the agents had lawfully entered the residence, the arrest of Harper was proper. *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The same is true relating to the seizure of the narcotics found in "plain view." *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Under *Coolidge, supra,* "an object that comes into view during a search incident to an arrest that is appropriately limited in scope under existing law may be seized without a warrant."

The initial entry and related limited "plain view" search and the subsequent de-tailed search pursuant to the search warrant were legal, valid and proper.

## II.

Harper contends that the court erred in dismissing his request to delve into the veracity of Dempsey's affidavit in support of the issuance of the search warrant.

■ The search warrant issued was based upon the magistrate's finding that probable cause existed to believe that certain property, i. e., "depressant or hallucinogenic drugs in violation of the federal drug laws and weapons violative of the National Firearms Act" were being concealed on the premises. As noted, *supra,* Dempsey's affidavit in support of the warrant alleged, *inter alia,* that he observed Harper carrying marijuana in the ashtray, that Harper acknowledged that he had been smoking it, that Harper attempted to hide a sack of heroin he had been holding, and that a weapon fell out of a closet onto the floor.

The credibility of these statements is not attacked or challenged by Harper. Harper's attack is rather directed to other statements within the affidavit, of a background nature, which outline the manner in which Dempsey had received an arrest warrant for Black and the additional information which led him to proceed to the 4022 Minnie residence. These statements, however, were not dispositive in the magistrate's determination whether a search warrant should be issued to search for drugs and weapons. Harper confuses the probable cause requirements for the arrest of Black with the probable cause required to obtain the search warrant for the 4022 Minnie residence. The adequacy of the probable cause in support of the arrest warrant is not, and has never been an issue in this case. The prior judicial determination in support of its issuance is not attacked. *See United States v. Cravero, supra.* Accordingly, the presumed interrelated, interdependency of probable cause relative to the arrest warrant and subsequent search war-

rant which Harper attempts to establish is non-existent.

 The search warrant and the affidavit in support of its issuance must be considered and scrutinized independently. A careful reading of the affidavit convinces us that it meets the test set forth in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). It contains sufficient underlying facts and circumstances so as to enable the magistrate to determine whether probable cause exists. A "commonsense" approach is to be used in considering the adequacy of the "underlying circumstances" set forth within an affidavit. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Since affidavits in support of search warrants may be based on hearsay information and need not reflect direct personal observations of the affiant, *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), we hold that the unchallenged observations of Dempsey relative to the presence of marijuana, heroin, and a weapon, sufficiently established probable cause for the issuance of the search warrant. Harper's contention that the trial court "summarily dismissed defendant's request to delve into the veracity of Agent Dempsey's affidavit in support of the search warrant" [Appellant's Brief, p. 23] is wholly without merit. The record reflects that the trial court permitted counsel for Harper to cross-examine Government Agents and Witnesses Dempsey and Porter without limitation or restriction and to make inquiries far afield of matter contained in the Dempsey affidavit at the September 22, 1975, hearing on Harper's Motion to Suppress. [*See* R., Vol. I.] In reality, Harper's complaint is directed, we believe, to the trial court's finding that the Dempsey affidavit is adequate and sufficient on its face. The trial court so found. [R., Vol. II, pp. 310.] *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Neal,* 500 F.2d 305 (10th Cir. 1974); *United States v. Holliday,* 474 F.2d 320 (10th Cir. 1973). Our review of the suppression hearing record leaves us with the firm conviction that nothing developed in the broad ranging cross-examination by Harper's counsel did, in any event, successfully impeach or attack the facts contained in the affidavit. Harper, we believe, would have the trial court test the sufficiency of the affidavit without applying common sense and realism.

## III.

We have carefully considered Harper's remaining allegations of error, which relate to the admission of evidence and instructions to the jury. We hold they are individually and jointly without merit.

WE AFFIRM.