**UNITED STATES of America, Appellee,**

v.

**Lavanne Elaine HAMMOND,
Defendant-Appellant.**

**No. 1208, Docket 77–1496.**

United States Court of Appeals,
Second Circuit.

Argued July 20, 1978.

Decided Sept. 28, 1978.

Richard E. Rieder, New York City, for defendant-appellant.

Sarah S. Gold, Asst. U. S. Atty., Southern District of New York, New York City (Robert B. Fiske, Jr., U. S. Atty., Howard W. Goldstein, Asst. U. S. Atty., Southern District of New York, New York City, of counsel), for the United States of America.

Before MESKILL, Circuit Judge, and DUMBAULD * and PORT,** District Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment entered in the United States District Court for the Southern District of New York, Constance Baker Motley, *Judge*, convicting appellant Lavanne Hammond after a four-day jury trial of conspiring to possess heroin with intent to distribute and conspiring to distribute heroin. Hammond was sentenced to two years in prison; the sentence was suspended and she was placed on three years probation. We affirm the conviction.

Because the sole issue on this appeal concerns the circumstances surrounding the arrest of appellant Hammond, we relate the events leading to the conviction in only the most summary fashion. The government proved that in April, 1977, Hammond and Millicent Jones, a friend of Hammond's and a co-defendant at trial, conspired to possess heroin with intent to distribute and to distribute heroin, in violation of federal narcotics laws. 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 846. Undercover agents for the Drug Enforcement Administration arranged with Jones to purchase a one-eighth kilogram quantity of heroin, the transaction to take place with the assistance of Hammond and a friend of Hammond's named Basil Hansen. The purchase price of the heroin was to have been $7,000. Apparently, Hansen spotted surveillance cars and a police helicopter while he was on his way to get the heroin and he abandoned the effort. The sale was never consummated. At trial, testimony of DEA undercover agents was introduced, as were a number of tape-recorded conversations, tending to show the nature and extent of Hammond's involvement in the conspiracy.

During the afternoon of May 3, 1977, shortly after the heroin sale had been aborted, two surveillance agents saw Hammond enter her rented home on DeReimer Avenue in the Bronx. They also saw Basil Hansen enter the house. Knowing that Hansen was a convicted narcotics dealer who had escaped from the Metropolitan Correctional Center in New York City (apparently the first person to have done so), and knowing as well that warrants were outstanding for Hansen's arrest (including a warrant issued under a New York State murder indictment), the agents called for assistance. Back-up agents arrived soon thereafter. The agents approached the house and knocked on the door. After about five minutes, appellant Hammond appeared at a second-story window; the agents told her that they were looking for Hansen. At the front door, they showed her a photograph of Hansen, whom she denied knowing. The agents then proceeded to look throughout the house for Hansen, but could not find him.

While in the kitchen, one of the agents placed Hammond under arrest for her role

* Hon. Edward Dumbauld, Senior District Judge of the Western District of Pennsylvania, sitting by designation.

** Hon. Edmund Port, Senior District Judge of the Northern District of New York, sitting by designation.

in the narcotics conspiracy and advised her of her constitutional rights. There was no warrant to arrest Hammond. On the kitchen table, within Hammond's reach, was a pocketbook. The agent looked into the pocketbook for a weapon and, while looking, saw a number of leases and a driver's license, all of which he seized. Hammond was then taken to DEA headquarters. The leases and the driver's license were introduced into evidence at trial.

Two agents remained inside the house after Hammond's departure, and two remained outside the house for additional surveillance purposes. A while later, a Ford rental car was observed driving down De-Reimer Avenue toward Hammond's house. The agents recognized the car as the same one previously observed during surveillance of Jones' apartment. The car stopped in front of Hammond's house and, after a mild flurry of activity, the precise nature of which is unclear from the record, left the area. Their suspicions aroused, the agents notified fellow-agents regarding this incident and asked them to return to the De-Reimer Avenue vicinity. During their discussion of the evening's events, the agents remembered noticing a number of books on carpentry during their earlier visit, as well as a receipt for lumber and various carpentry tools. The agents concluded that a secret hiding place might have been built somewhere in the house and, because they

had seen Hansen enter the house but not leave, they believed he was still inside. The agents renewed their search for Hansen and went upstairs to the master bedroom. While there, they noticed that the outside window had been opened and that the telephone had been moved since their prior visit. They also noticed that, inside one of the closets, a light was shining from a previously unseen compartment located behind a false wall of the closet. The wall had been moved. Looking into this compartment, they saw and removed several boxes of glassine envelopes, measuring spoons and a package of white powder, later determined to be a mixture of quinine and sugar. The white powder and two photographs of the secret compartment, one with the wall in place and the other with the wall ajar, were introduced into evidence at trial.

■ Appellant claims that the district court erred by refusing to grant a pre-trial motion to suppress the driver's license, the leases, the two photographs and the quinine and sugar mixture. At oral argument, counsel for appellant made it quite clear that he had no quarrel with the agents' "right to go in and search for Hansen"—he saw no legal problem with the agents' entering Hammond's home and "looking for Hansen," at least so long as the police officers had probable cause to believe that Hansen was in the residence.[1] There is no

---

1. Although we need not and do not decide this question here, we note that counsel's decision not to argue this point seems to be in accord with hints by the Supreme Court that, at least in some circumstances, an arrest warrant may be all that is required for law enforcement officers to enter a private residence, or to search that residence, for purposes of arresting the subject of the warrant. For example, in *Harris v. United States*, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), the Court noted that "[t]his is not a case in which law enforcement officials have invaded a private dwelling without authority and seized evidence of crime. . . . Here the agents entered the apartment under the authority of lawful warrants of arrest." 331 U.S. at 153, 67 S.Ct. at 1102 (citations omitted). *Harris*, of course, was expressly overruled in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), but the *Chimel* majority assumed without deciding that the arrest was valid and did not

reach the question of the lawfulness of the entry itself. 395 U.S. at 755, 89 S.Ct. 2034. *See also United States v. Lefkowitz*, 285 U.S. 452, 463–64, 52 S.Ct. 420, 76 L.Ed. 877 (1932); *Jones v. United States*, 357 U.S. 493, 499–500, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); *Coolidge v. New Hampshire*, 403 U.S. 443, 477–78, 480–81, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). A number of decisions by inferior federal courts have been made along these lines. *See, e.g., United States v. Woods*, 560 F.2d 660, 665–66 (5th Cir. 1977), *cert. denied* 435 U.S. 906, 55 L.Ed.2d 497 (1978); *United States v. Harper*, 550 F.2d 610, 613–14 (10th Cir.), *cert. denied*, 434 U.S. 837, 98 S.Ct. 128 (1977); *United States v. Cravero*, 545 F.2d 406, *on reconsideration*, 545 F.2d 420 (5th Cir. 1976), *cert. denied*, 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977); *United States v. James*, 528 F.2d 999, 1016–17 (5th Cir.), *cert. denied*, 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976); *United States v. Jones*, 475 F.2d 723, 729 (5th Cir.

claim that such probable cause did not exist here. Accordingly, we cannot fault the seizure of the quinine and sugar mixture in the upstairs closet, nor was its introduction into evidence, along with the photographs of the secret compartment, error. *See Coolidge v. New Hampshire,* 403 U.S. 443, 464–71, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plain view); *United States v. Berenguer,* 562 F.2d 206, 210 (2d Cir. 1977). The real question on this appeal, then, is whether the evidence seized incident to the warrantless arrest of Hammond, namely, the driver's license and leases, should have been suppressed.

■ Appellant relies principally on the recent case of *United States v. Reed,* 572 F.2d 412 (2d Cir. 1978), where this Court held that, in the absence of exigent circumstances, federal law enforcement officers are prohibited by the Fourth Amendment from entering the home of a suspect to effect a felony arrest for which they have both statutory authority and probable cause but no warrant. Here, probable cause for Hammond's arrest is conceded. However, assuming, without deciding, that the warrantless arrest of Hammond in her home was unlawful, *see United States v. Reed, supra,* or that the warrantless seizure of the contents of the pocketbook incident to her arrest was unlawful, *see United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), we conclude that the introduction of the driver's license and the leases was harmless error. *Chapman v. California,* 386 U.S. 18, 21–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The driver's license was in the name of Yolanda Williams, and apparently described a person of considerably different physical characteristics than appellant Hammond. The leases were for various residences. One of them was for the DeReimer address and two of them were for other addresses; two of them were in names other than Hammond. During their deliberations the jury asked for other evidentiary items, but expressed no interest whatsoever in the driver's license or the leases. On these facts, we believe beyond a reasonable doubt that, even if there was error, it was harmless.

The judgment of the district court is affirmed.

1973); *Rodriguez v. Jones,* 473 F.2d 599, 605–06 (5th Cir.), *cert. denied,* 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973) (action under 42 U.S.C. § 1983); *United States v. Brown,* 151 U.S.App.D.C. 365, 369–70, 467 F.2d 419, 423–24 (1972) (Clark, *J.*) (interpreted in *United States v. Ford,* 180 U.S.App.D.C. 1, 14, 553 F.2d 146, 159 n.45 (D.C.Cir.1977) to be based upon presence of exigent circumstances); *United States v. McKinney,* 379 F.2d 259, 262–63 (6th Cir. 1967) (McCree, *J.*); *United States v. Alexander,* 346 F.2d 561 (6th Cir. 1965), *cert. denied,* 382 U.S. 993, 86 S.Ct. 575, 15 L.Ed.2d 480 (1966); *United States v. Joines,* 246 F.2d 278 (3d Cir. 1957), *vacated,* 357 U.S. 573, 78 S.Ct. 1380, 2 L.Ed.2d 1547 (1958), *on remand,* 258 F.2d 471, 472 (1958), *cert. denied,* 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958); *Love v. United States,* 170 F.2d 32 (4th Cir. 1948), *cert. denied,* 336 U.S. 912, 69 S.Ct. 601, 93 L.Ed. 1076 (1949). *See also Dorman v. United States,* 140 U.S.App.D.C. 313, 324, 435 F.2d 385, 396 & n.25 (1970); *id.* at 33–34, at 402–03 & n.6 (Wright, *J.,* concurring in part and dissenting in part.) Other decisions have taken a different approach. *See, e. g., Gov't of Virgin Islands v. Gereau,* 502 F.2d 914, 928–30 (3d Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975); *Fisher v. Volz,* 496 F.2d 333, 338–43 (3d Cir. 1974) (action under 42 U.S.C. § 1983). *See also United States v. Sumlin,* 567 F.2d 684, 686 n.1 (6th Cir. 1977); *Rice v. Wolff,* 513 F.2d 1280, 1291–92 & n.7 (8th Cir. 1975), *rev'd on other grounds sub nom. Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *United States v. Shye,* 492 F.2d 886, 891 (6th Cir. 1974); *Lankford v. Gelston,* 364 F.2d 197 (4th Cir. 1966). *See generally* Rotenberg & Tanzer, *Searching for the Person to be Seized,* 35 Ohio S.L.J. 56 (1974); Wilgus, *Arrest Without a Warrant,* 22 Mich.L. Rev. 798 (1924); Note, 23 Stan.L.Rev. 995 (1971).