[No. 3510–II.   Division Two.   June 11, 1980.]

LINDA C. HOCKER, *Appellant,* v. JAMES P. WOODY, ET AL, *Respondents.*

*M. C. Cole,* for appellant.

*Slade Gorton, Attorney General,* and *Thomas W. Hayton* and *William C. Collins, Assistants,* for respondents.

PETRIE, J.—Plaintiff, Linda C. Hocker, individually and as guardian ad litem for her two minor children, sought damages from James P. Woody, a probation and parole officer of the State of Washington, alleging that on several occasions he forcibly and without a search warrant entered and searched her residence, all in violation of 42 U.S.C. § 1983.[1] After a bench trial, the trial court determined that plaintiff's constitutional rights had not been violated. Plaintiff appeals; we affirm.

One of Woody's parolees, Dennis Swindler, had been paroled under an intensive parole program to Hocker's residence on February 14, 1977. She described him as "my boyfriend and father of my baby"—the latter presumably resulting from an earlier live–in arrangement which had extended from April to September 1976. Swindler's parole was suspended in August 1977, but was reinstated shortly thereafter with direction that he move to a progress house. Swindler did move, but he absconded from that facility on October 13, 1977. Woody's subsequent activities in search of Swindler in and about Hocker's residence provide the basis for this section 1983 action.

Hocker testified that on October 13 Swindler came to her house "and got his clothes when he absconded" and that he never returned thereafter, although he did contact her several times by telephone. She also testified that Woody came to her house on three separate occasions in October; on each occasion she consented to his entry into her house and to his search therein for Swindler. When several later visits occurred she and her children became increasingly disturbed by Woody's requests to enter and look into her several rooms in his search for Swindler.

---

[1] 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

On January 10, 1978, she refused to let Woody enter the house. Nevertheless, he broke a corner of the screen door, entered the house, searched unsuccessfully for Swindler, and left. The trial court found that this was the one entry into Hocker's house which "was conducted through a forcible entry." Although Hocker contends she resisted other entries, we find substantial evidence to support the trial court's finding.

The trial court also found that subsequent to October 13 Swindler was "playing a cat and mouse game" with Woody, that "Woody had good cause to believe" that Hocker was an active participant in Swindler's efforts to evade Woody, and that as to each search Woody "had probable cause to believe that parolee Swindler was present in the residence . . ." Hocker does not challenge the "cat and mouse" finding, but she does contend that there is insufficient evidence to sustain the latter two findings.

Though we are archly fascinated by the trial court's unchallenged "cat and mouse" finding, we are somewhat baffled as to its precise meaning and, accordingly, as to its legal significance. The record reflects that Swindler purchased a readily identifiable motor vehicle in December 1977 which was subsequently observed both in front of Hocker's residence and in her garage. Hocker testified that Swindler had a key to her garage but not to her house. Swindler used Hocker's address as his address when he signed an application for certificate of title for the vehicle on December 20, 1977, and also when, on January 15, 1978, he released his interest in the vehicle by signing a subsequently issued certificate of title.

Additionally, a neighbor testified that he observed Swindler running down the street away from Hocker's residence on one occasion when police or parole authorities were at her residence. Woody testified that he observed a person who generally fit Swindler's description fleeing from Hocker's residence. He also testified that an unidentified neighbor informed him on several occasions that Swindler was present at the Hocker residence.

In view of the totality of the evidence we are constrained to conclude that the trial court did not intend to find that Swindler actually *resided* at Hocker's residence after he absconded from the progress house. Rather, we conclude that the court's finding simply indicates that Swindler was a frequent visitor at her residence.

Despite Hocker's denial that she had no knowledge that Swindler ever returned to her house, we find substantial evidence in the record to support the trial court's finding of Woody's "good cause to believe" that Hocker was an active participant in Swindler's efforts to evade arrest. As to the remaining challenged finding, *i.e.*, Woody's probable cause to believe Swindler was at the residence, we need concern ourselves only with evidence pertaining to that belief immediately prior to the one *forced* entry and search of January 10.

Woody testified that approximately 7:30 or 8:00 in the evening of January 10 he received a telephone call (apparently from his unidentified neighbor informant) that Swindler was at the Hocker residence "out working on the car." There is little information in the record concerning this neighbor. We know only through Woody's testimony that he or she had a good range of visibility to Hocker's residence, had lived in the neighborhood as long as Swindler had, and could describe Swindler's physical characteristics to Woody's satisfaction. Nevertheless, Woody obtained the assistance of two local police officers; and, together, they proceeded to the residence. He observed Swindler's car at the house and approached the front door. At that point in time, the factual information available to Woody through his own knowledge, coupled with the information conveyed to him by the neighbor whose reliability cannot be judicially assured, gave him at least "reasonable belief" if indeed not "probable cause to believe" that Swindler was on the premises when he broke Hocker's screen. *See Latta v. Fitzharris*, 521 F.2d 246 (9th Cir.), *cert. denied*, 423 U.S. 897, 46 L. Ed. 2d 130, 96 S. Ct. 200 (1975).

Finally, the record reflects that at no time did Woody obtain either a search warrant or an arrest warrant from a judicial officer. Rather, on October 14, 1977, he personally executed an administrative order which recites on its face that it is a "warrant" and that the parole officer, pursuant to authority vested by RCW 9.95.120 and RCW 72-.04A.090,[2] has suspended the parole of the named parolee and has ordered "said parolee to be confined and detained in jail."

Before turning to the legal issues presented by this appeal we note preliminarily that Woody was clearly acting under color of authority granted to him by statute. Additionally, there is no question as to Swindler's breach of a condition of his parole on October 13 and continuing thereafter until, incidentally, he voluntarily turned himself in to the authorities in March 1978. Indeed, he told Hocker of his intent to abscond on the very day he left the progress house.

The first inquiry in this section 1983 suit is whether Hocker has been deprived of "any rights, privileges, or immunities secured by the Constitution or laws." *Baker v. McCollan,* 441 U.S. 921, 61 L. Ed. 2d 433, 99 S. Ct. 1015 (1979). She does not contest the validity of the administrative arrest warrant nor of Woody's authority to arrest

---

[2] RCW 9.95.120 provides in part:

"Whenever the board of prison terms and paroles or a probation and parole officer of this state has reason to believe a convicted person has breached a condition of his parole or violated the law of any state where he may then be or the rules and regulations of the board of prison terms and paroles, any probation and parole officer of this state may arrest or cause the arrest and detention and suspension of parole of such convicted person pending a determination by the board whether the parole of such convicted person shall be revoked."

RCW 72.04A.090 provides in part:

"Whenever a parolee breaches a condition or conditions under which he was granted parole, or violates any law of the state or rules and regulations of the board of prison terms and paroles, any probation and parole officer may arrest, or cause the arrest and suspension of parole of, such parolee without a warrant, pending a determination by the board."

Swindler even without a warrant.[3] She asserts, rather, that armed only with an arrest warrant, and in the absence of any exigent circumstances, Woody's entry of her home (at least on January 10) constituted an unreasonable search of her home in violation of the Fourth Amendment.

Recently, it has been authoritatively determined that, absent exigent circumstances, the Fourth Amendment prohibits police officers from making a warrantless and nonconsensual entry of a felony suspect's home in order to arrest him. *Payton v. New York*, 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). The majority opinion in *Payton* recites, at page 603, however, that

> for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.

The same opinion also expressly disclaims any intent to resolve

> any question concerning the authority of the police, without either a search or arrest warrant, to enter a third party's home to arrest a suspect.

*Payton,* at 583.

As thus circumscribed, we view the first issue as whether a probation and parole officer, armed with a valid arrest warrant and in search of a parolee who has absconded from parole, may forcibly enter the dwelling of a third party when the parole officer (1) has good cause to believe the third party is actively participating in the parolee's attempts to evade the authorities and (2) has a reasonable belief that the parolee is on the premises invaded. We hold that the parole officer's forcible entry of that third party's premises under those circumstances and

---

[3]We note, but do not rely upon, the rule that an administratively issued arrest warrant, at least when supervisory authority is necessary for its issuance and when it is employed strictly within the confines of the administrative field regulated, carries no greater constitutional limitation than does a judicially issued arrest warrant. *Abel v. United States,* 362 U.S. 217, 4 L. Ed. 2d 668, 80 S. Ct. 683 (1960).

for that purpose is not an unreasonable search within the meaning of the Fourth Amendment.

The reported cases which discuss this general problem usually involve the question of police officers seeking to arrest felony suspects rather than parole officers searching for their errant parolees. Nevertheless, we do not view Woody's authority to pursue Swindler any less extensive than a police officer's authority to pursue and arrest a felony suspect.

There appears to be a distinct split of authority among the several circuits of the United States Court of Appeals as to the sufficiency of an arrest warrant to effect a search of a third party's premises unless exigent circumstances are present to substitute for the requirement of a search warrant. *Contrast Fisher v. Volz,* 496 F.2d 333 (3d Cir. 1974), *with United States v. Cravero,* 545 F.2d 406 (5th Cir. 1976). *See also* cases cited in *United States v. Hammond,* 585 F.2d 26, 28 n.1 (2d Cir. 1978). One noted writer sides with the *Fisher v. Volz* requirement that absent exigent circumstances, only a search warrant will suffice to invade the premises of a third party. Professor LaFave expresses his thoughts as follows:

> When entry into premises other than those of the person to be arrested is contemplated, then surely it is the protection provided by a search warrant rather than an arrest warrant which is most needed. "A warrant for the arrest of a suspect may indicate that the police officer has probable cause to believe the suspect committed the crime; it affords no basis to believe that the suspect is in some stranger's home." A prior judicial determination of the grounds to arrest the person the police believe is therein would primarily protect that person, who is not deemed entitled to such protection when arrested on the street, but would only indirectly protect the person whose premises are intended to be entered. The latter individual would more directly benefit from a judicial determination as to whether it is probable the wanted person is presently in those premises, which also is likely to be a more complicated issue than the probable–cause–to–arrest question.

(Footnotes omitted.) 2 W. LaFave, *Search and Seizure* § 6.1, at 384–85 (1978).

We need not choose from among the varying delicate gradations placed upon the problem by the several authorities. In the case at bench Woody had within his knowledge an additional element, *i.e.,* the good cause to believe that Hocker was actively participating in Swindler's attempts to evade arrest. Whether that knowledge can be specifically categorized as an "exigent circumstance" or as an additional, independent element balancing the scales in the direction of a reasonable exercise of police power is inconsequential. We hold that when a parole officer armed with a valid arrest warrant has a reasonable belief that his clearly errant parolee is (1) within the premises of a third party and (2) the third party is actively participating in the parolee's attempts to evade arrest, he may forcibly enter that third party's premises to search for the parolee.

Accordingly, we conclude, as did the trial court, that Woody's search of Hocker's residence January 10, 1978 was not an unreasonable search. Therefore, he did not violate any constitutional right guaranteed to her by the Fourth Amendment.

In view of our resolution of this issue, we do not reach the second issue of what immunity, if any, a state parole officer has in a section 1983 action. *See Martinez v. California,* 444 U.S. 277, 285 n.11, 62 L. Ed. 2d 481, 100 S. Ct. 553, 559 (1980).

Judgment affirmed.

PEARSON, A.C.J., and PETRICH, J., concur.

Reconsideration denied July 17, 1980.

Review granted by Supreme Court October 23, 1980.