[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16444
Non-Argument Calendar

_____

D.C. Docket No. 2:15-cr-00283-LSC-HGD-15

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY DEJUAN WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 20, 2017)

Before TJOFLAT, HULL and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

After a jury trial, Anthony DeJuan Williams appeals his convictions for

conspiracy to distribute cocaine, possession with intent to distribute 500 or more

grams of cocaine, multiple counts of using a telephone in furtherance of drug trafficking, and possession of a firearm by a convicted felon.[1]

On appeal, Williams challenges the district court's denial of his motion to suppress evidence agents found in an outbuilding adjacent to Williams's main residence while they were executing a warrant for Williams's arrest. The district court concluded that the search of the adjacent outbuilding was a reasonable entry pursuant to the arrest warrant, and alternatively, was a valid protective sweep. Williams argues that it was unreasonable for the agents to believe anyone, much less Williams, lived in or was present inside the outbuilding. For the first time on appeal, Williams argues that the district court also erred in denying the motion to suppress because the evidence established that the agents executed the underlying arrest warrant at "approximately" 6:00 a.m., which rendered the arrest warrant invalid. After review, we affirm.[2]

## I.  BACKGROUND FACTS

According to the evidence presented at the suppression hearing, Federal Bureau of Investigation ("FBI") agents began surveilling a large-scale drug trafficking operation led by Patrick DeWayne Hall. During surveillance, agents

---

[1]Defendant Williams's offenses were charged in two separate indictments, but the two criminal cases were later consolidated by the district court.

[2]"Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts de novo." United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000). In so doing, we construe the facts in the light most favorable to the prevailing party. Id.

learned of a new participant, later identified as defendant Williams. The agents intercepted telephone calls between Hall and defendant Williams discussing a kilogram of cocaine.

The agents tracked Hall to defendant Williams's residence at 344 Sun Valley Road, where the agents also found a car registered to Williams parked in the driveway. The agents heard from the street what sounded to them like a metal drug compressor, which is used to repress and repackage cocaine with a diluting agent. The agents could not tell whether the activity was occurring in the main residence or the outbuilding. Approximately twenty minutes later, the agents observed both Hall and defendant Williams walk into the carport and leave in Williams's car.

Williams's residence consisted of a single-family, ranch-style house, with a carport and metal shed abutting the house, and an outbuilding approximately twenty feet away in the backyard. Photographs of the outbuilding show a structure with a front and a back door, several windows, and a garage door. The district court found, and we do not disagree, that the outbuilding "looks like a mother-in-law suite or guest house." In addition to surveillance, the agents performed a public records search, which listed 344 Sun Valley Road as defendant Williams's probable address.

3

After a grand jury indicted defendant Williams, Hall and 24 other individuals with, among other things, conspiracy to distribute controlled substances, a warrant was issued for defendant Williams's arrest. On October 21, 2015, FBI agents prepared to perform coordinated arrests of multiple members of the charged conspiracy, including defendant Williams, at 6:00 a.m. During a pre-arrest operational meeting, Special Agent Michael Greene, the leader for the team assigned to arrest defendant Williams at the 344 Sun Valley Road address, was given information about Williams, including a photograph of Williams and a description of his car. At that meeting, particular note was made of the outbuilding because it looked like it could be a living space, and the agents did not know whether defendant Williams lived in the main house or the outbuilding. As a consequence, Agent Greene planned to make simultaneous entries of both buildings.

The team of agents met first at a staging area, and Agent Greene performed a drive-by of 344 Sun Valley Road. At that time, Agent Greene observed Williams's car and two other vehicles parked at the residence. Based on these observations, Agent Greene believed defendant Williams was possibly inside the residence with multiple other subjects.

The FBI agents arrived at 344 Sun Valley Road at approximately 6:00 a.m. to execute the arrest warrant. Agent Greene split his team into two groups, one at

4

the main residence and one at the outbuilding.  Each team moved on its own command.  After a knock and announce, Agent Greene was with the first group as it breached the main residence door.  Agent Greene then moved around to the outbuilding, which was about to be breached, and was the fourth person to enter the outbuilding.  According to Agent Greene, the entry of the main residence and the outbuilding happened within about a minute of each other.  Inside the outbuilding, agents found a white powdery residue and some razor blades on a table and a drug press sitting in a corner of the room, but did not find any people.  As the agents "cleared" the outbuilding, Agent Greene called back on his radio and learned that the other group in the main residence had defendant Williams in custody.  Once defendant Williams was in custody and the property was cleared, the search stopped.

Based on what the agents observed in plain view in the outbuilding and the main residence, agents obtained a search warrant for the property.  During the search pursuant to the search warrant, agents found cocaine, heroin, diluting agent, blenders, two large mechanical drug presses, wrappers, and weapons.  Agents also found evidence connecting defendant Williams to the residence, including a deed indicating Williams had purchased the property.

## II.  SEARCH INCIDENT TO ARREST

"'[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.'"  United States v. Bervaldi, 226 F.3d 1256, 1263 (11th Cir. 2000) (quoting Payton v. New York, 445 U.S. 573, 603, 100 S. Ct. 1371, 1388 (1980)).  To enter a residence to execute an arrest warrant, a law enforcement officer must have a reasonable belief: (1) "that the location to be searched is the suspect's dwelling," and (2) "that the suspect is within the residence at the time of entry."  United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir. 1995); see also Bervaldi, 226 F.3d at 1263.

In undertaking this two-part inquiry, we consider the totality of the circumstances known to the officer at the time the warrant is executed and are guided by "common sense factors."  Bervaldi, 226 F.3d at 1263; Magluta, 44 F.3d at 1535.  Officers may make reasonable inferences and presumptions based on the time of day or observations at the scene, and these presumptions can be rebutted only by evidence to the contrary.  Magluta, 44 F.3d at 1535-36.  Thus, it is reasonable, for example, to infer that a person is at home asleep at 7:30 a.m. or that a person is at home when his vehicle is parked outside or when he has a visitor.  Id. at 1535, 1538.

If officers have made such presumptions and have a reasonable belief that a suspect is present somewhere on the premises, they may search the entire premises of a residence, until the suspect is found.  Maryland v. Buie, 494 U.S. 325, 332-33, 110 S. Ct. 1093, 1097 (1990).  Moreover, if the initial entry into the suspect's residence is lawful, the officers are permitted to seize any contraband in plain view within the residence.  United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006).

To protect their safety while making, and after, an arrest, law enforcement officers may also perform a "protective sweep" of the residence.  Buie, 494 U.S. at 327, 334, 110 S. Ct. at 1094, 1098.  A protective sweep is an exception to the general requirement that officers need exigent circumstances and probable cause, or a search warrant, to conduct a search of a person's home.  Id. at 333-34, 110 S. Ct. at 1098.  A protective sweep involves only a "cursory inspection of those spaces where a person may be found" and ends when the reasonable suspicion of danger is dispelled.  Id. at 335-36, 110 S. Ct. at 1099.  In conducting a protective sweep, officers are permitted to look in "closets and other spaces immediately adjoining the place of arrest"—with or without probable cause or reasonable suspicion—because the threat of danger is greatest there.  Id. at 334, 110 S. Ct. at 1098.  To search more removed areas of the residence, however, officers must have at least a reasonable suspicion of the presence of dangerous individuals.  Id.

That is, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id.

## III.  WILLIAMS'S CLAIMS

### A.    Justifications for the Search

Here, the district court did not err in concluding that the search of the adjacent outbuilding was reasonable for two independent reasons: (1) the search was a reasonable entry pursuant to the arrest warrant; and alternatively (2) the search qualified as a valid protective sweep.

First, the district court properly concluded that the agents' simultaneous entry of both the main residence and the adjacent outbuilding, pursuant to an arrest warrant for defendant Williams, was a reasonable search.  The totality of the facts and circumstances within the agents' knowledge supported a reasonable belief that Williams lived on the property—either in the main residence or in the outbuilding—and also that Williams was present in one of those two buildings at the time the arrest warrant was executed.  A public records database listed 344 Sun Valley Road as defendant Williams's address.  Both structures on the property at that address were possible living spaces.  Surveillance showed that Williams frequented the property, allowing the agents to believe Williams may be living or

8

present in either structure.  It was further reasonable for agents to presume Williams was there based on common sense factors, such as the fact that the arrest took place early in the morning and that Williams's car was in the driveway.

Second, the district court correctly concluded that the search of the outbuilding while defendant Williams was being arrested in the main residence qualified as a valid protective sweep.  The outbuilding was a separate structure twenty feet from the main residence in which Williams was arrested.  Thus, the arresting agents needed reasonable suspicion that dangerous individuals were present in the outbuilding for its search to be a valid protective sweep.  See Buie, 494 U.S. at 334, 110 S. Ct. at 1098.  The layout of the property, the close proximity of the outbuilding to the main residence, the noise indicating drug distribution activities might be occurring on the property, and the fact that three cars were parked in the driveway all suggested that there may be more people present on the premises, besides defendant Williams, who could pose a threat to the arresting agents' safety.  Moreover, once the agents had a valid justification for entering the outbuilding, any evidence found in plain view was properly seized and could be used to obtain a search warrant.  See United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006).

9

**B.     Execution of the Arrest Warrant**

Finally, there is no merit to defendant William's newly raised argument that the evidence found in the outbuilding should have been suppressed because the arrest warrant executed at "approximately" 6:00 a.m. was invalid.[3]  The Fourth Amendment does not contain any time limitations on reasonable searches and seizures.  See U.S. Const. amend. IV; United States v. Gerber, 994 F.2d 1556, 1559 (11th Cir. 1993).  Federal Rule of Criminal Procedure 41 provides that warrants are to be executed "during the daytime," unless the issuing judge for good cause shown expressly authorizes another time.  Fed. R. Crim. P. 41(e)(2)(A)(ii).  Daytime is defined as "the hours between 6:00 a.m. and 10:00 p.m." local time.  Fed. R. Crim. P. 41(a)(2)(B).  "Unless a clear constitutional violation occurs, noncompliance with Rule 41 requires suppression of evidence only where (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule."  Gerber, 994 F.2d at 1560 (internal quotation marks and alterations omitted) (involving a search conducted one day after a search warrant expired under Rule 41).

Agent Greene testified that his team left the staging area after 5:55 a.m. and that the arrest warrant was executed at approximately 6:00 a.m.  When pressed,

---

[3]We review grounds for evidentiary error that were not raised in the district court only for plain error.  See United States v. Turner, 474 F.3d 1265, 1275 (11th Cir. 2007).

10

Agent Green was adamant that he did not think it was possible the warrant was executed before 6:00 a.m., explaining that Williams's arrest was part of a coordinated execution of arrests of multiple charged conspirators in the area. However, even assuming arguendo that the team began the knock-and-announce procedure one or two minutes before 6:00 a.m., there was no evidence that the agents did so deliberately or that Williams's arrest at the residence would not have otherwise occurred. Indeed, defendant Williams does not dispute that the arrest warrant was supported by probable cause. Under Gerber, any technical noncompliance with Rule 41(e)(2)(A)(ii) would not require suppression of the evidence. And Defendant Williams cites no precedent establishing a constitutional violation under these circumstances. Accordingly, defendant Williams has not shown error, much less plain error.

## IV.  CONCLUSION

For all these reasons, we affirm the district court's denial of defendant Williams's motion to suppress.

**AFFIRMED.**