[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15729
Non-Argument Calendar

_____

D.C. Docket No. 8:15-cr-00337-CEH-TBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSHUA ANTHONY RIVERA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 2, 2020)

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

After a jury trial, Joshua Rivera[1] was convicted of a string of armed robberies at convenience stores in June 2015 in the Tampa, Florida area.  She appeals, challenging her convictions and 560-month total prison sentence for four counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), two counts of possession of a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A), and one count of possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1).  She raises four issues on appeal: (1) whether evidence obtained from a motel room and a vehicle should have been suppressed; (2) whether the court erred in determining that Hobbs Act robbery counts as a predicate "crime of violence" for the § 924(c) offenses; (3) whether § 403 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018), prevented the court from applying an enhanced consecutive sentence of twenty-five years in prison for the second § 924(c) offense; and (4) whether trial counsel provided ineffective assistance by failing to challenge the validity of the search warrants and to move for a competency hearing.

After careful review, we affirm Rivera's convictions and sentence.  First, the district court properly denied her motion to suppress, and her arguments challenging

---

[1] Rivera states that, since trial, she has come out as transgender and now identifies as a woman.  But there is no dispute that at the time of the events in this case she presented as a man.  Therefore, we will use Rivera's preferred feminine pronouns where possible to do so without creating confusion with the record.

the search warrant affidavits were not properly raised below and do not show plain error on appeal. Second, our precedent establishes that Hobbs Act robbery is a crime of violence for purposes of § 924(c). Third, our precedent also establishes that § 403 of the First Step Act does not apply to her because she was sentenced before that Act's enactment. Finally, the record is not sufficiently developed to consider her claims of ineffective assistance.

## I.

We begin with the motion to suppress. The relevant facts, consistent with the district court's findings after a suppression hearing, are as follows. From June 7 through 17, 2015, five convenience stores in the Tampa area were robbed during early morning hours by an unknown Hispanic male brandishing a short-barreled shotgun. In four of the robberies, the suspect appeared to be wearing the same white athletic shoes with black edging. Although the suspect's face was covered, surveillance footage from inside one of the convenience stores shortly before it was robbed showed a Hispanic male, whose face was uncovered, wearing similar shoes as the robber. This person was seen exiting the store and getting into a Ford "Expedition or van" parked nearby. A dark Ford Expedition was also seen around the same area and time of two other robberies. Law enforcement was able to obtain a license plate number for the Expedition that was seen on June 7.

With this information, law enforcement located the Expedition, which was registered to Leila Green, at a Knights Inn motel. Approximately five to seven officers went to the motel to conduct surveillance on the vehicle. While conducting surveillance, Detective Ronald Corr observed a Hispanic male who matched the description of the robbery suspect, later identified as Rivera, and a Black female, later identified as Green, "screaming and cussing at each other" outside of room 314. Green entered the room and slammed the door. After briefly walking away, Rivera returned and tried to open the door, which was locked. Rivera then kicked in the door and entered the room.

Upon seeing these events, Corr radioed the other officers to inform them of a potential violent domestic situation involving the suspect, and they made the decision to check on Green's safety. The officers approached the motel-room door and an officer identified himself. After a brief conversation with Rivera, officers entered the motel room and made contact with Rivera and Green, who had a bruise on her cheek. Meanwhile, another officer, Sergeant Janak Amin, went straight to the back of the motel room, checked the bathroom, and then turned around. As he turned around, he saw a white athletic sneaker with black trim on the floor of the motel room. Recognizing this sneaker from pictures of the robbery suspect, Amin yelled to everyone in the room to "get out" so the room could be secured and a warrant obtained. According to Corr, he could also see the sneaker from about

4

halfway inside the room.  The room was immediately emptied.  The events inside the motel room lasted no more than two minutes.

Based on the discovery of the sneaker, the officers obtained search warrants for the motel room and Green's Expedition.  In the Expedition, officers found a short-barreled shotgun similar to the one used in the robberies, among other pieces of evidence.

Rivera filed a pretrial motion to suppress the fruits of what she maintained was an illegal search of the motel room.  Rivera asserted that the officers began searching the motel room immediately after entry and found the shoe in a bag, not in plain view.  She further contended that officers had no justification to enter deeper into the room, where the shoe could allegedly be seen in plain view, because they had already secured Rivera and determined that Green was safe.

After holding an evidentiary hearing, at which Corr, Amin, and another officer testified, the district court denied the motion to suppress.  The court found that the officers' entry into the motel room was justified by exigent circumstances—to check on Green's safety.  Once inside the room, the court concluded, the officers were entitled to conduct a limited protective sweep to ensure no one else was present who could pose a threat to the officers on the scene.  And the court found that the shoe was in plain sight of both Amin, who conducted the protective sweep, and Corr, who was in the middle of the room.

5

We affirm the district court, reviewing its factual findings for clear error and its application of the law to those facts *de novo*.  *United States v. Holt*, 777 F.3d 1234, 1255 (11th Cir. 2015).

While warrantless searches and seizures within a home are presumptively unreasonable, an exception to the warrant requirement permits police to "enter a private premises and conduct a search if 'exigent circumstances' mandate immediate action."  *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002); *see United States v. Ross*, 963 F.3d 1056, 1062 (11th Cir. 2020) (*en banc*) (explaining that the Fourth Amendment's protections may extend to hotel rooms).  As relevant here, "[u]nder the 'emergency aid' exception, officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury."  *United States v. Timmann*, 741 F.3d 1170, 1178 (11th Cir. 2013) (cleaned up)).

When officers are lawfully within the premises, they may undertake a "protective sweep"—a quick and limited search of the premises to protect the safety of the officers or others—so long as they "possess[] a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the . . . scene."  *Id.* (quoting *Maryland v. Buie*, 494 U.S. 325, 337 (1990)).  "The sweep must be narrowly confined to a cursory visual inspection

6

of those places in which a person might be hiding." *United States v. Yarbrough*, 961 F.3d 1157, 1163 (11th Cir. 2020) (quotation marks omitted).

Police can seize evidence discovered in plain view during a protective sweep and use it to obtain a search warrant. *United States v. Williams*, 871 F.3d 1197, 1202 (11th Cir. 2017). The "plain view" doctrine permits a warrantless seizure "where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *United States v. Folk*, 754 F.3d 905, 911 (11th Cir. 2014) (quotation marks omitted).

Rivera does not dispute that her violent entry into the motel room on the heels of a verbal confrontation with the room's occupant created exigent circumstances that justified the officers' warrantless entry. *See Timmann*, 741 F.3d at 1178. But she maintains that Sergeant Amin's "protective sweep" did not occur until after the officers had secured her. By that time, in Rivera's view, any "reasonable suspicion of danger had ended" because the officers had no reason to believe that they would find any additional persons or weapons in the motel room. Therefore, Rivera contends, the "officers had no continuing right to search" the motel room without a search warrant or some other applicable exception.

Here, the district court properly denied the motion to suppress. To begin with, it's not clear that resort to the protective sweep doctrine is even necessary in this

case. Detective Corr testified that he was able to see the sneaker in plain view from the middle of the motel room, and the district court credited that testimony. *See Holt*, 777 F.3d at 1255 (stating that we ordinarily defer to the factfinder's credibility determinations). Rivera makes no argument that Corr was not lawfully in that place or could not lawfully have accessed the sneaker. *See Folk*, 754 F.3d at 911.

In any event, we agree with the district court that a protective sweep was authorized under the circumstances. Although officers entered the motel room under the emergency-aid exception to the warrant requirement, they also had reason to believe that Rivera was a suspect in multiple robberies involving the use of short-barreled shotgun and that he had been assisted by one or more persons in a Ford Expedition. Moreover, as a result of the presence of the Expedition at the motel, the officers were uncertain as to whether others, apart from Rivera and Green, might be present in the motel room. The officers had not been monitoring the door to room 314 before seeing Rivera and Green argue, and they entered the motel room only minutes later. So, there was a risk that the motel room contained another unknown person with access to a firearm. *See United States v. Standridge*, 810 F.2d 1034, 1037 n.2 (11th Cir. 1987) (holding that a protective sweep of a motel room was permissible where "the police had not followed [the defendant] when he went to the motel and the room had not been constantly watched," and "thus, the police could not know whether [the defendant] was alone"). And while Rivera questions the

8

timing of the search, the evidence reflects a very rapid sequence of events, where Sergeant Amin conducted the protective sweep immediately after other officers entered and made contact with Rivera and Green.

In the uncertain circumstances facing the officers on the scene, officer safety justified the officer's cursory visual inspection of the bathroom and back part of the motel room—places where a person could be hiding. *See Yarbrough*, 961 F.3d at 1163. And there is no evidence that the sweep went beyond such a cursory visual inspection. According to testimony at the suppression hearing, it was a purely visual inspection that took less than a minute and was limited to areas where a person could be hiding.

Additionally, the plain-view doctrine applies to the discovery of the sneaker because it was in plain view and its incriminating character would have been immediately apparent to the officers.[2] *See Folk*, 754 F.3d at 911. The masked robber was wearing sneakers with the same distinctive pattern, Rivera matched the description of a man wearing similar sneakers just before the robbery, and an Expedition linked to at least one of the robberies was parked at the motel. While a person's "[m]ere possession of a similar sneaker" alone may not be enough, Br. of Appellant at 26, the combined circumstances made the incriminating character of

---

[2] Contrary to the government's claim, this argument or something like it was presented during the suppression hearing, even if the district court did not directly rule on it.

9

the sneaker in the motel room where Rivera was present immediately apparent. Because the sneaker could lawfully have been seized, it clearly could have been used as support for a search-warrant application. *See Williams*, 871 F.3d at 1202.

Finally, Rivera argues that the affidavits submitted in support of the search warrants for the motel room and Expedition failed to establish probable cause in light of "material inconsistencies from witness reports," so, in her view, the evidence found during the subsequent searches should be suppressed. Br. of Appellant at 26–27. But Rivera did not raise this issue until after sentencing, when she submitted a *pro se* motion seeking suppression or a new trial. At that point, it was too late to seek suppression. *See* Fed. R. Crim. P. 12(b)(3) (requiring that a motion to suppress evidence be raised before trial). And we normally do not consider arguments for suppression that were not timely raised below. *See United States v. Curbelo*, 726 F.3d 1260, 1266 (11th Cir. 2013) ("A defendant who fails to make a timely suppression motion cannot raise that claim for the first time on appeal.").

To the extent review is available here, Rivera must establish a plain error, *see United States v. Johnson*, 777 F.3d 1270, 1277 (11th Cir. 2015) ("Johnson did not raise this argument [for suppression] in the district court, so we review the argument for plain error."), which requires showing an error that is "clear under current law," *United States v. Olano*, 507 U.S. 725, 734 (1993). She cannot meet that burden.

10

"To attack the veracity of a warrant affidavit, a defendant must make a preliminary showing that the affiant made intentional misstatements or omissions (or made misstatements with a reckless disregard for their truthfulness) that were essential to the finding of probable cause." *United States v. Burston*, 159 F.3d 1328, 1333 (11th Cir. 1998). Rivera identifies purported inconsistencies between witness statements, which she claims were selectively omitted from the warrant applications. But we are not persuaded that the alleged misstatements and "selective omissions" she identifies—regarding witness descriptions of the robber's race, clothing, and firearm—were clearly essential to the finding of probable cause to search the motel room and Expedition, such that correction is warranted under plain-error review. *See id.*; *Johnson*, 777 F.3d at 1277.

## II.

Next, Rivera's argument that Hobbs Act robbery does not qualify as a "crime of violence" for purposes of 18 U.S.C. § 924(c) is foreclosed by circuit precedent. *See United States v. St. Hubert*, 909 F.3d 335, 346 (11th Cir. 2018) ("Hobbs Act robbery is categorically a crime of violence under the use-of-force clause in § 924(c)(3)(A)."), *abrogated in part on other grounds by United States v. Davis*, 588 U.S. __, 139 S. Ct. 2319 (2019). Under our prior-precedent rule, we are bound by a prior decision unless and until it is overruled by us sitting *en banc* or by the Supreme Court. *United States v. Vega-Castillo,* 540 F.3d 1235, 1236 (11th Cir. 2008).

11

Rivera maintains that our decision in *In re St. Fleur*, 824 F.3d 1337, 1341 (11th Cir. 2016), where we first held that Hobbs Act robbery qualifies as a crime of violence under the use-of-force clause in § 924(c)(3)(A), lacks any precedential value because it failed to apply the categorical approach. But even if we agreed with that argument, this Court subsequently applied the categorical approach in *St. Hubert* and held, consistent with *St. Fleur*, that Hobbs Act robbery is categorically a crime of violence under the use-of-force clause in § 924(c)(3)(A). 909 F.3d at 346–50. We are bound by *St. Hubert*, which has not been overruled or undermined to the point of abrogation. *See Vega-Castillo,* 540 F.3d at 1236. Accordingly, we affirm Rivera's § 924(c) convictions.

## III.

Staying with § 924(c), Rivera contends that we should vacate and remand for resentencing in light of § 403 of the First Step Act, which amended the penalties for § 924(c) offenses. Again, Circuit precedent forecloses her argument.

When the district court sentenced Rivera, § 924(c)(1)(C) provided that each "second or subsequent [§ 924(c)] conviction" triggered a sentence of no less than twenty-five years in prison, *see* 18 U.S.C. § 924(c)(1)(C) (2015), instead of the ordinary statutory minimum, *see id.* § 924(c)(1)(A), (B). Like all sentences under § 924(c), this enhanced penalty had to run consecutively to "any other term of imprisonment imposed on the person." 18 U.S.C. § 924(c)(1)(D). And in the

Supreme Court's view, § 924(c)(1)(C) "unambiguous[ly]" required a twenty-five-year minimum for a "second" (or third or fourth) conviction obtained in the same proceeding as the first. *See Deal v. United States*, 508 U.S. 129, 132–34 (1993). The Court rejected the argument that § 924(c)(1)(C) applied only when a defendant had a § 924(c) conviction from a prior, separate proceeding. *Id.* at 134.

In § 403 of the First Step Act, enacted on December 21, 2018, Congress effectively overruled *Deal*. Section 403(a) amended § 924(c)(1)(C) so that the twenty-five-year minimum applies only where a § 924(c) conviction "occurs after a prior conviction under this subsection has become final." First Step Act, § 403(a). In other words, it prevents a defendant from receiving the enhanced penalty for multiple violations of § 924(c) for the first time in a single prosecution. Instead, the ordinary minimums apply to each conviction. Section 403(b) states that this amendment "shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment*." First Step Act, § 403(b) (emphasis added).

In this case, the district court applied the pre-First-Step-Act rules at Rivera's 2016 sentencing and sentenced him to thirty-five years of imprisonment for the two § 924(c) counts (ten years plus twenty-five years) to run consecutively to the concurrent sentences for the other counts. If Rivera had been sentenced after the enactment of the First Step Act, her second § 924(c) conviction would have been

13

subject to a ten-year minimum, *see* 18 U.S.C. § 924(c)(1)(B)(i), not a twenty-five-year minimum, because it did not "occur[] after a prior conviction under this subsection has become final." First Step Act, § 403(a). The difference is huge: fifteen extra years in prison.

Rivera maintains that we should give retroactive effect to § 403 because it merely clarified Congress's original intent for the enhanced penalty to apply to only true recidivists. She further contends that the rule of lenity applies.

But we recently rejected these same arguments in *United States v. Smith*, 967 F.3d 1196, 1210–13 (11th Cir. 2020), holding that § 403 does not apply to defendants who were sentenced before the First Step Act's date of enactment. We explained that, while § 403 was titled, "Clarification of Section 924(c)," the title of a statute cannot limit the plain meaning of the text. *Id.* at 1211–12. And we concluded that "there is no ambiguity in § 403(b)," which "plainly draws a line based on the Act's enactment date and provides that whether the amendments in § 403(a) apply to a case depends on which side of that line the imposition of the sentence falls." *Id.* at 1212. We further held that "a sentence is 'imposed' for purposes of § 403(b) when it is pronounced in the district court," joining the other circuits that had decided the issue. *Id.* at 1213. Finally, we stated the rule of lenity did not apply because there is no ambiguity in § 403. *Id.*

14

Under *Smith*, Rivera cannot benefit from § 403 of the First Step Act because she was sentenced before that Act's enactment date. *See id.* at 1212. And because there is no ambiguity in § 403, the rule of lenity does not apply. *Id.* at 1213. Accordingly, the district court was required to apply a consecutive twenty-five-year minimum sentence for Rivera's second § 924(c) conviction.

## IV.

Finally, we consider Rivera's arguments that her trial counsel provided ineffective assistance in two ways: (1) failing to raise as a basis for suppression the alleged omissions and misrepresentations in the search warrant affidavits; and (2) failing to raise Rivera's competency despite evidence of mental-health issues.

"Except in the rare instance when the record is sufficiently developed, we will not address claims for ineffective assistance of counsel on direct appeal." *United States v. Verbitskaya*, 406 F.3d 1324, 1337 (11th Cir. 2005). As the Supreme Court has explained, because the trial record is "devoted to issues of guilt or innocence," it ordinarily will not disclose the facts necessary to judge the reasons for counsel's actions or omissions. *Massaro v. United States*, 538 U.S. 500, 504–05 (2003). "Without additional factual development, moreover, an appellate court may not be able to ascertain whether the alleged error was prejudicial." *Id.* at 505.

For these reasons, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Id.* at 504. That's

15

true "even if the record contains some indication of deficiencies in counsel's performance." *Id.* In a § 2255 proceeding, the "court may take testimony from witnesses for the defendant and the prosecution and from the counsel alleged to have rendered the deficient performance." *Id.* at 505. Moreover, the § 2255 motion will often be decided by the same district judge who presided at trial, so the judge will have a better perspective for determining counsel's effectiveness and whether any deficiencies were prejudicial. *Id.* at 506.

Here, we decline to consider Rivera's ineffective-assistance-of-counsel claims on direct appeal. It appears that Rivera did not raise any dissatisfaction with counsel until after sentencing, when she filed a *pro se* motion challenging the search-warrant affidavits. As we have noted, the district court denied the motion without addressing the merits of her claims. So the record contains few, if any, facts necessary to judge the reasons for counsel's actions or omissions. Accordingly, this is not a rare case where the record is sufficiently developed to decide claims of ineffective assistance on direct appeal. *See Verbitskaya*, 406 F.3d at 1337.

## V.

In sum, and for the reasons stated above, we affirm Rivera's convictions and total sentence.

**AFFIRMED.**

16