[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 21-12492

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LAROME DEON WAITERS,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cr-00452-SCB-JSS-1

————————————————

Before WILSON, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

A jury convicted Larome Waiters for possessing fentanyl and heroin with the intent to distribute them, in violation of 21 U.S.C. sections 841(a)(1) and 841(b)(1)(B), and for possessing a firearm and ammunition after a felony conviction, in violation of 18 U.S.C. sections 922(g)(1) and 924(e). Waiters was sentenced to 17.5 years' imprisonment. On appeal, he challenges his convictions and sentence, arguing the district court erred by denying two motions to suppress and enhancing his sentence under the Armed Career Criminal Act (ACCA) and the sentencing guidelines. We affirm Waiters's convictions and sentence.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A Florida county court entered a warrant for Waiters's arrest on July 19, 2019, after an officer observed him driving with a suspended license. But Florida law enforcement did not arrest Waiters until August 29, 2019[1]—the day after officers obtained a search warrant for Waiters's apartment. Upon arresting Waiters, the officers discovered plastic bags of fentanyl, crack cocaine, and marijuana in the fanny pack he was wearing.

---

[1] Waiters's motion to suppress lists the date of arrest as August 30, 2019, but the actual date of arrest was August 29, 2019.

The officers then searched Waiters's apartment pursuant to the search warrant.  Inside they found more fentanyl, two handguns, multiple plastic bags, a scale, Waiters's driver's license, a bulletproof vest, and a large amount of cash.  The officers read Waiters his *Miranda* warnings, and Waiters admitted that he sold fentanyl and the handguns were his.

Before trial, Waiters moved to suppress his statements to law enforcement because the officers interrogated him without asking if he wished to waive his *Miranda* rights or speak with them.  And Waiters alleged he was highly intoxicated and thus incapable of knowingly, voluntarily, and intelligently waiving his *Miranda* rights.

Waiters also moved to suppress the evidence from his apartment because it resulted from a violation of his Fourth Amendment rights.  Waiters alleged the officers had been watching him since at least July 9, and their choice to unreasonably delay his arrest until August 29 violated his right to be free from unreasonable searches and seizures.  Waiters argued that law enforcement would not have obtained the search warrant or the evidence discovered during its execution absent the Fourth Amendment violation.

At the hearing on Waiters's suppression motions, the government called the law enforcement officers who participated in his arrest and interview.  They testified Waiters appeared normal when he was arrested; his gait, composure, and responses were normal; his answers to their questions weren't slowed or slurred; and his odor and eyes appeared normal.  The officers noted that

Waiters never asked for an attorney after being read his *Miranda* rights.  The government then played Waiters's 43-minute recorded interview for the district court.

Based on the officers' testimony and the review of the interview, the district court denied both of Waiters's suppression motions.  As to the Fourth Amendment issue, the district court ruled that the officers were not required to immediately arrest Waiters, and the search of his apartment was pursuant to a valid search warrant.  As to the *Miranda* issue, the district court ruled that Waiters's waiver was knowing and voluntary based on the totality of the circumstances.  It found that Waiters was read his *Miranda* warnings and had been arrested before, so he was "not unfamiliar with what happens after being arrested."  And Waiters "freely talked and talked and talked" after being read his warnings, which served as an implied waiver.  The district court noted that, outside of Waiters's allegations, there was no evidence he was intoxicated during the interview.

After trial, the jury convicted Waiters for possessing fentanyl and heroin with the intent to distribute them and for possessing a firearm and ammunition after a felony conviction.  In advance of the sentencing hearing, the probation officer prepared a presentence investigation report.  The report detailed Waiters's 2017 Florida robbery conviction and his six Florida convictions for possessing controlled substances (cocaine and oxycodone) with the intent to sell them.  Based on his prior convictions, the report calculated his sentence using the fifteen year mandatory minimum

under the ACCA, and increased his guideline range because he was a career offender. With an offense level of 34, and a criminal history category of VI, Waiters's advisory guideline range was 262 to 327 months.

Waiters objected to the presentence report on several grounds, but three are relevant to this appeal. First, he argued he was 16 years old when he committed the robbery, so using that conviction to enhance his sentence violated his due process and Eighth Amendment rights. Second, Waiters objected to the use of his Florida drug offenses as predicates under the sentencing guidelines and the ACCA because the convictions lacked a *mens rea* element. Third, he maintained the indictment did not allege, and the jury did not find, the fact of his prior convictions as was necessary to enhance his sentence under the ACCA.

The district court overruled Waiters's objections. It ruled that his robbery conviction was a proper predicate because he was charged as an adult, and our case law foreclosed Waiters's other objections. The district court varied downward from the advisory guideline range and sentenced Waiters to 210 months' imprisonment followed by 6 years' supervised release. Waiters timely appealed.

## STANDARDS OF REVIEW

Rulings on motions to suppress involve mixed questions of fact and law. *United States v. Ransfer*, 749 F.3d 914, 921 (11th Cir. 2014). When reviewing the denial of a motion to suppress, we

review for clear error the district court's findings of fact and review de novo its application of the law to the facts. *Id.* "Absent clear error, we are bound by the district court's findings of fact and credibility choices at the suppression hearing." *United States v. Hawkins*, 934 F.3d 1251, 1259 (11th Cir. 2019) (quotations omitted). We review de novo whether a prior conviction qualifies as a "serious drug offense" under the ACCA or a controlled substance offense under the sentencing guidelines. *United States v. Bates*, 960 F.3d 1278, 1293 (11th Cir. 2020) (citations omitted).

## DISCUSSION

Waiters appeals both his convictions and his sentence. As to his convictions, he argues that the district court erred in denying his suppression motions. As to his sentence, Waiters argues that the district court erroneously considered his prior convictions as predicate offenses to enhance his sentence under the ACCA and the guidelines.

### A.  Claims Relating to Waiters's Conviction

Waiters argues his conviction was unlawful for two reasons. First, he asserts "law enforcement's unreasonable and unnecessary delay in executing [his arrest] violated his Fourth Amendment right to be free from unreasonable searches and seizures," and all evidence obtained during and after his arrest was the fruit of that violation. Waiters contends the delay was unreasonable because law enforcement elected not to arrest him for over a month, even though it had earlier opportunities to execute his arrest. He says

law enforcement only had probable cause to secure the search warrant (and thus seize the contested evidence from his apartment) because it surveilled Waiters during that period of delay.

Second, Waiters asserts the district court erred in denying his motion to suppress the statements he made during the custodial interrogation because he did not knowingly and voluntarily waive his *Miranda* rights. He maintains that: (1) agents "minimized and downplayed the significance" of his rights, effectively rendering the advisement a nullity, and failed to ask if Waiters wished to waive his rights and voluntarily speak with them; and (2) Waiters was highly intoxicated at the time of the interrogation, which the officers should have known based on their observations of his speech and behavior and his "alleged involvement in the drug trade."

### 1.  Fourth Amendment Claim

First, law enforcement did not violate his Fourth Amendment rights. The Fourth Amendment protection against unreasonable searches and seizures does not include a constitutional right to be arrested. *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006) ("Because there is no constitutional right to be arrested, a suspect cannot complain that officers postponed arresting him in order to obtain more incriminating statements or other evidence against him." (citations omitted)). So Waiters had no constitutional right to be arrested earlier than he was. *United States v. Cravero*, 545 F.2d 406, 413 (5th Cir. 1976). Because the "Fourth Amendment does not contain any time limitations on reasonable searches and seizures," *United States v. Williams*, 871 F.3d 1197, 1202 (11th

Cir. 2017), Waiters's argument that his arrest was untimely and unconstitutional fails.  The district court did not err in denying this suppression motion.

## 2.  *Miranda* Claim

Second, Waiters's Fifth Amendment rights were not violated.  Before commencing a custodial[2] interrogation, police officers must clearly inform an individual of certain rights, including the right to remain silent and the right to the presence of an attorney during questioning.  *Florida v. Powell*, 559 U.S. 50, 53, 59–60 (2010) (citing *Miranda*, 384 U.S. at 441–42, 479).  These "warnings [must] reasonably convey to a suspect his rights as required by *Miranda*." *Id.* at 60 (cleaned up).

A defendant may waive his *Miranda* rights if he does so voluntarily, knowingly, and intelligently, based on the totality of the circumstances.  *United States v. Bernal-Benitez*, 594 F.3d 1303, 1318 (11th Cir. 2010) (citations omitted).  A voluntary waiver "is the product of a free and deliberate choice rather than intimidation, coercion, or deception," and it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  The waiver may be express or implied by the defendant's conduct.  *See Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010) ("[W]aiver of *Miranda* rights may be implied through the

---

[2] Waiters's interrogation was undisputedly custodial.

defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver. (quotation omitted)).

Here, the officers read Waiters his rights, after which he verbally confirmed he understood those rights and then continued to answer questions. As the district court explained:

> The defendant, Mr. Waiters, was read his *Miranda* warnings, and he had been arrested before, so he was not unfamiliar with what happens after being arrested, and he freely talked and talked and talked and talked, so the fact that he was not asked whether he wished to waive those rights, I think he clearly waived those rights by talking and talking and talking.

These findings are not clearly erroneous. The officers sufficiently conveyed to Waiters his rights, and Waiters confirmed he understood his rights by responding "Yes, Sir," and then continuing to answer questions. This was sufficient to imply waiver from all the circumstances.

Regarding Waiters's alleged intoxication, the officers who spoke with Waiters testified they did not observe indications of intoxication. The district court also watched the 43-minute recorded interview before ruling and observed:

> [Waiters] answered the questions . . . . [H]e was not [so] out of it that he could not answer questions that were asked. Certainly he volunteered a lot of

information . . . but he never asked for an attorney, he continued to talk to them.

Both officers or agents who testified said that he did not appear to them to be intoxicated, that they didn't smell any odor of alcohol or marijuana on him, that they didn't notice anything about his eyes, [that] they didn't notice anything about his appearance, and essentially that he appeared to them to be coherent, and I've had no testimony to the contrary, and I certainly can't make the determination after listening to the interviews that he was not coherent. He certainly did answer the questions. . . .

So taking into consideration the totality of the circumstances, I'm going to deny the motion. I have had no evidence presented that he was intoxicated, or intoxicated to the extent that this was not a knowing and voluntary situation where he talked to the agents, and I've had only testimony to the opposite. The *Miranda* warnings were read to him, and he did talk extensively after that, and he never asked for an attorney.

Based on the officers' testimony and its observations of the video, the district court did not clearly err by ruling that Waiters knowingly and voluntarily waived his *Miranda* rights.

## B. Claims Relating to Waiters's Sentence

Waiters argues his sentence was unlawful for two reasons. First, he contends the district court erred by enhancing his sentence under the ACCA and the guidelines for his prior convictions for robbery and possessing controlled substances with the intent to distribute them. Second, he asserts that because his prior convictions were not alleged in the indictment or found by a jury, the district court should not have used them to enhance his sentence under the ACCA.

## 1. Predicate Offenses and Enhancements under the ACCA and Sentencing Guidelines

The district court did not err in enhancing Waiters's sentence based on his prior convictions. The ACCA imposes a fifteen-year minimum sentence on defendants who possess a firearm after three prior convictions for "serious drug offenses" or violent felonies. *Shepard v. United States*, 544 U.S. 13, 15 (2005). A prior state conviction meets the ACCA's definition of a "serious drug offense" if it involves "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [section] 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). Section 102 defines a "controlled substance" as "a drug or other substance, or immediate precursor, included in" the federal controlled substances schedule. 21 U.S.C. § 802(6).

The sentencing guidelines define a "career offender" as an adult defendant whose present offense is a "controlled substance offense" and who has at least two prior felony convictions for either a crime of violence or a "controlled substance offense." U.S.S.G. § 4B1.1(a). A "controlled substance offense" includes a state law offense for the possession of a controlled substance with intent to distribute that is punishable by more than a one-year term of imprisonment. *Id.* § 4B1.2(b).

For three reasons, Waiters argues that his sentence should not have been enhanced under the ACCA and his guideline range should not have been increased using the career offender guideline. First, he contends that his prior Florida convictions for possessing controlled substances with the intent to sell them (in violation of Florida Statutes section 893.13(1)) are not serious drug offenses under the ACCA and they are not controlled substance offenses under the career offender guideline. Waiters asserts that, "given the severe nature of the mandatory penalty required under the ACCA, Congress did not likely intend for a strict liability offense, such as a Florida controlled substances offense, to qualify as a 'serious drug offense.'" And "[t]he Sentencing Commission likewise had the same intentions [as Congress] when it drafted the career offender [g]uidelines provisions."

Our precedent forecloses Waiters's argument.  A conviction under section 893.13(1),[3] we held in *United States v. Smith*, 775 F.3d 1262, 1268 (11th Cir. 2014), is a "serious drug offense" under the ACCA and a "controlled substance offense" under the career offender guideline.  "Neither definition requires that a predicate state offense includes an element of *mens rea* with respect to the illicit nature of the controlled substance."  *Id.*  Thus, despite his arguments to the contrary, our precedent is clear that Waiters's prior controlled substance convictions under section 893.13 qualify as predicate offenses for the ACCA and the career offender guideline.

Second, Waiters argues the district court erred in considering his juvenile robbery conviction as a predicate offense under the ACCA and the career offender guideline.  He says the failure of the ACCA and of the guidelines to "distinguish between prior juvenile and prior adult offenses" creates "irrational sentencing schemes that result in arbitrary sentences that fail to account for the relative culpability of offenders," which violates the Fifth and Eighth Amendments.

Again, our precedent forecloses Waiters's argument.  In *United States v. Spears*, 443 F.3d 1358 (11th Cir. 2006), the defendant made the same argument Waiters does that his "robbery conviction" did not "count for ACCA enhancement because he was only seventeen years old when he committed the robbery."  *Id.* at 1360–

---

[3] "[A] person may not sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance."  Fla. Stat. § 893.13(1)(a).

61. We called the argument "meritless." *Id.* at 1361. The defendant had been "convicted and sentenced as an adult for the robbery," we said, and, "therefore, the robbery conviction count[ed] towards ACCA enhancement because it was punishable by imprisonment for a term exceeding one year." *Id.* We've said the same thing about the career offender guideline. *See United States v. Wilks*, 464 F.3d 1240, 1243 (11th Cir. 2006) (explaining that "youthful offender convictions can qualify as predicate offenses for sentence enhancement" under the ACCA and the career offender guideline). Because Waiters, like the defendants in *Wilks* and *Spears*, was charged as an adult and was sentenced to three years' imprisonment, the district court did not err in considering Waiters's juvenile robbery conviction as a predicate offense under the ACCA and the career offender guideline.

Third, Waiters argues that his prior Florida controlled substance convictions were "broader than the corresponding federal 'serious drug offenses' and 'controlled substances offenses,'" because, while "Florida criminalized the sale or possession of ioflupane at the time of the prior offenses, [] federal law had removed ioflupane from the federal Controlled Substances Act schedules at the time of the instant federal offenses." Waiters argues that the district court should have used a time-of-sentencing approach to determine that ioflupane was no longer illegal at the relevant time.

Waiters did not raise this issue in his initial brief, so it would ordinarily be abandoned. *United States v. Campbell*, 26 F.4th 860, 871 (11th Cir. 2022). But even if we considered Waiters's

argument, it, like the others, is foreclosed by our precedent. In *United States v. Jackson*, 55 F.4th 846 (11th Cir. 2022), we held that the "ACCA's definition of a 'serious drug offense' under state law [] incorporate[s] the version of the federal controlled-substances schedules in effect when [the defendant] was convicted of his prior state drug offenses." *Id.* at 855. And the Supreme Court recently affirmed our holding in *Brown v. United States*, No. 22-6389, 2024 WL 2333428 (U.S. May 23, 2024). *Id.* at *3 ("The two cases now before us present the question whether a state crime constitutes a 'serious drug offense' if it involved a drug that was on the federal schedules when the defendant possessed or trafficked in it but was later removed. We hold that such an offense qualifies."). As to the career offender guideline, we held in *United States v. Dubois*, 94 F.4th 1284 (11th Cir. 2024), that the term "controlled substance" "means a substance regulated by state law when the defendant was convicted of the state drug offense, even if it is no longer regulated when the defendant is sentenced for the federal" offense. *Id.* at 1298.

Applied here, at the time of Waiters's Florida drug convictions, ioflupane was still a federal controlled substance and it was regulated as a controlled substance under state law. As in *Jackson* and *Dubois*, Waiters's prior drug convictions properly qualified as predicate offenses under the ACCA and the career offender guideline.

2.   Indictment Allegations and Jury Findings Needed in Support
of ACCA Application

The district court also did not err in applying the ACCA enhancement even though the predicate convictions were not alleged in the indictment or found by a jury. "Although it is ordinarily true that all elements of a crime must be alleged by indictment and either proved beyond a reasonable doubt or admitted by a defendant, there is an exception for prior convictions" used for sentence enhancements. *Smith*, 775 F.3d at 1266. Under this narrow exception, the fact of a prior conviction need not be alleged by the indictment and proved beyond a reasonable doubt or admitted by a defendant. *See id.*; *United States v. Harris*, 741 F.3d 1245, 1250 (11th Cir. 2014). Waiters admits as much. Thus, the district court did not err in applying the ACCA enhancement to his sentence.

**AFFIRMED.**